### COGSWELL v. CHUBB et al.

(Supreme Court, Appellate Division, First Department. January 24, 1896.)

1. MARINE INSURANCE—BREACH OF WARRANTY.
   An express warranty, in a policy, that the vessel insured was "to navigate only in inland waters of the United States and Canada," is broken where the vessel goes into the open waters of the Atlantic Ocean beyond Sandy Hook.

2. SAME—EFFECT OF BREACH.
   The breach of an express warranty, whether material or immaterial, renders the policy void from the time of the breach, and no recovery can be had for subsequent loss, though not produced or contributed to by the breach of warranty.

3. CUSTOM AND USAGE—EVIDENCE.
   A usage respecting the waters frequented by the yachts insured with a warranty that they are to navigate only "inland waters of the United States and Canada," so that the words "inland waters" will include the roadstead outside Sandy Hook, is not established by evidence that it was customary for many yachts, at an international yacht race, to accompany the competing boats over an ocean course, and that it was the custom of yachts to assemble at Newport, in the summer, for the squadron races, where it does not appear that yachts covered by such insurance went on the ocean on such occasions.

Appeal from superior court of New York City, jury term.

Action by William B. Cogswell against Percy Chubb and others on a policy of marine insurance. From a judgment entered on a verdict directed by the court in favor of defendants, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, WILLIAMS, PATTERSON, and O'BRIEN, JJ.

Everett P. Wheeler, for appellant.

J. L. Ward, for respondents.

PATTERSON, J.   The defendants in this action were underwriters on a policy of marine insurance on the steam yacht Fieseen, the property of the plaintiff.   The insurance was for the term of one year, beginning April 10, 1893, for $21,000, at which sum the vessel was valued, and these defendants were, by the terms of the policy to pay the $1/100$ part of any loss or damage occasioned by any of the perils insured against.   On the 9th of September, 1893, while in the lower New York bay, and under way, and in tow of another yacht, she came into collision with a steamship, and was damaged to the extent of about $16,000, and this action was brought to recover the $1/100$ part thereof.   The trial resulted in a direction to the jury to find a verdict for the defendants, from the judgment entered upon which, and from an order denying a motion for a new trial, the plaintiff has appealed.

A stipulation of the policy, written in between printed portions thereof, is in the following words: "Warranted to navigate only the inland waters of the United States and Canada and not below the Thousand Islands."   It appears in the record that, on the 9th day of September, 1893, the Fieseen, before the collision referred to, went out upon the high seas beyond the Sandy Hook and Scotland lightships, and into the open waters of the Atlantic Ocean; and that fact is set up as a breach of warranty, avoiding the policy, and preventing a recovery thereon.   There does not appear to be any doubt, on the evidence, that the vessel, on the 9th of September, had been on the open ocean, at least 10 miles off from the Sandy Hook Lighthouse, to the southward and eastward, as testified by Capt. Wicks, of the Electra, and she was south and southeast of the Scotland light.   Capt. Pressey, of the Vamoose, says the Fieseen raced with the boat commanded by him that day, and that the race began about 2 miles to the south and east of the Scotland light, and they ran about 18 miles in varying courses.   The witness Bulin says the Fieseen ran about 10 miles east from the Scotland lightship.   Mr. Stanwood swears she went about 12 miles east-northeast, directly, from Sandy Hook.   The effect of the whole evidence is that the vessel went out of inland waters.   Such waters are canals, lakes, streams, rivers, water courses, inlets, bays, etc., and arms of the sea between projections of land.   That ordinary and accepted signification of the words "inland waters" must be considered the sense in which the parties used them in their contract of insurance, unless, by agreement or understanding, some other was assigned to them; and there is nothing in the record to show that a different or wider meaning was intended to be given them..   Going to the open ocean, and then returning, was a plain breach of the warranty, the consequence of which was to avoid the policy; for, hard as the artificial rule may be, it is too firmly settled to be questioned that

the breach of an express warranty, whether material to the risk or not, whether a loss happens through the breach or not, absolutely determines the policy, and the assured forfeits his rights under it. Chase v. Insurance Co., 20 N. Y. 52; Stevens v. Insurance Co., 26 N. Y. 397; Day v. Insurance Co., 1 Daly, 13; Westfall v. Insurance Co., 2 Duer, 449; 1 Phil. Ins. p. 418, § 762.

It is claimed, however, on the part of the appellant, that the words "inland waters," as used in the policy, are not limited to their ordinary signification, but that a usage existed, respecting the waters frequented by yachts such as the Fieseen, in view of which usage the policy was written, and that the warranty should be construed by that usage, and a broader meaning applied to the words, —one that would include in the category of inland waters the roadstead outside of Sandy Hook, and as far as the yacht went out upon the sea on the 9th of September. Evidence of usage to explain, or, rather, to give effect to, the meaning of the policy, is very commonly resorted to in cases of this character; and, as said by Mr. Phillips (1 Phil. Ins. p. 73, § 119), "the subject-matter of marine insurance and other mercantile contracts makes it necessary to go out of the written instruments in order to interpret them." But before usage can be appealed to there must be proof that there really is a usage,—something existing and in connection with which the underwriter is assumed to have taken the risk. All that is in evidence on the subject is that it is customary for many yachts and other craft, of large and small dimensions, whenever an international yacht race takes place, to accompany the competing boats over an ocean course. This scarcely establishes a usage of the character to qualify an express warranty. International yacht races are of infrequent occurrence. That yachts covered by insurance go upon the ocean to follow them does not appear. This policy was written April 11, 1893. It is not shown that an international yacht race was in contemplation for the year during which the policy was to run. Attending the yacht race at Newport, and the custom of yachts to assemble at that port in the summer for the squadron races, do not establish a usage, for the same reasons. All of this testimony is insufficient to prove that the parties contracted for anything other than what is expressed in the plain and accepted meaning of the words of the warranty.

The further contention is made that, the loss happening after the policy attached, and the breach of the warranty in no wise producing or contributing to the loss, but it being occasioned by independent causes, the plaintiff may recover, notwithstanding the breach. The learned counsel for the plaintiff admits that the English authorities are against this view, as they very decidedly are. The American cases of breaches of implied warranties of seaworthiness, cited on the argument, and in the appellant's brief, do not establish a contrary rule affecting the express warranty contained in this policy.

We fail to see the pertinency of the argument made respecting lights carried by certain vessels under the requirements of the navi-

gation laws of the United States.   That steamers plying between New York and Newport, and New York and Long Branch, and New York and Coney Island, carry the lights prescribed for vessels navigating inland waters, in addition to those of ocean-going steamers, is doubtless true; but they are the same lights required of coastwise steamers, and those plying between the places mentioned may be, and probably are, classed as such.

The judgment and order appealed from must be affirmed, with costs.   All concur.