WILLIAM B. COGSWELL, Appellant, *v.* PERCY CHUBB and CHARLES MYERS, Respondents.

*Marine insurance — a policy on a vessel warranted to navigate only inland waters avoided by its going outside of Sandy Hook — definition of "inland waters" — that the act in violation of the policy did not cause the loss, is immaterial — proof of a usage.*

A stipulation contained in a policy of marine insurance in the following words: "Warranted to navigate only the inland waters of the United States and Canada and not below the Thousand Islands," is broken where the vessel insured passes out of New York bay and sails upon the open ocean for a distance of twelve miles from the Sandy Hook light house.

Such violation of the stipulation constitutes a breach of the warranty and avoids the policy without regard to the question whether the prohibited act is material to the risk or whether a loss happens through the breach.

Inland waters are canals, lakes, streams, rivers, watercourses, inlets, bays and arms of the sea between projections of land.

Evidence of usage, to explain or give effect to the meaning of a policy of marine insurance, is admissible, but proof must be made that the usage in question existed and was one in connection with which the underwriter may be assumed to have taken the risk.

Proof that it is customary for many yachts and other craft of large and small dimensions to accompany the competing boats over an ocean course whenever an international yacht race takes place, does not establish a usage that insured vessels, permitted to navigate inland waters, are accustomed to go upon the open ocean.

The fact that the breach of the warranty in the policy did not produce or contribute to the loss in any manner is not material and does not entitle the plaintiff to a recovery if the breach of the express warranty in fact occurred.

APPEAL by the plaintiff, William B. Cogswell, from a judgment of the Superior Court of the city of New York in favor of the defendants, entered in the office of the clerk of said court on the 18th day of May, 1895, upon the verdict of a jury rendered by direction of the court, and also from an order entered in the office of the clerk of said court on the 20th day of May, 1895, denying the plaintiff's motion for a new trial made upon the minutes.

*Everett P. Wheeler,* for the appellant.

*J. Langdon Ward,* for the respondents.

Patterson, J.:

The defendants in this action were underwriters on a policy of marine insurance on the steam yacht *Fieseen*, the property of the plaintiff. The insurance for the term of one year, beginning April 10, 1893, was for $21,000, at which sum the vessel was valued, and these defendants were by the terms of the policy to pay the one one-hundredth part of any loss or damage occasioned by any of the perils insured against. On the 9th of September, 1893, while in the lower New York bay and under way and in tow of another yacht, she came into collision with a steamship and was damaged to the extent of about $16,000, and this action was brought to recover the one-hundredth part thereof. The trial resulted in a direction to the jury to find a verdict for the defendants, from the judgment entered upon which, and from an order denying a motion for a new trial, the plaintiff has appealed.

A stipulation of the policy, written in between printed portions thereof, is in the following words: "Warranted to navigate only the inland waters of the United States and Canada, and not below the Thousand Islands." It appears in the record that on the 9th day of September, 1893, the *Fieseen*, before the collision referred to, went out upon the high seas, beyond the Sandy Hook and Scotland lightships, and into the open waters of the Atlantic ocean; and that fact is set up as a breach of warranty, avoiding the policy and preventing a recovery thereon.

There does not appear to be any doubt on the evidence that the vessel, on the ninth of September, had been on the open ocean, at least ten miles off from the Sandy Hook lighthouse, to the southward and eastward, as testified by Captain Wicks of the *Electra*, and she was south and southeast of the Scotland light. Captain Pressey of the *Vamoose* says the *Fieseen* raced with the boat commanded by him that day, and that the race began about two miles to the south and east of the Scotland light, and they ran about eighteen miles in varying courses. The witness Bulin says the *Fieseen* ran about ten miles east from the Scotland lightship. Mr. Stanwood swears she went about twelve miles east-northeast directly from Sandy Hook. The effect of the whole evidence is that the vessel went out of inland waters. Such waters are canals, lakes, streams, rivers, watercourses, inlets, bays, etc., and arms of the sea

between projections of land. That ordinary and accepted significa-
tion of the words "inland waters" must be considered the sense in
which the parties used them in their contract of insurance, unless
by agreement or understanding some other was assigned to them;
and there is nothing in the record to show that a different or wider
meaning was intended to be given them. Going to the open ocean
and then returning was a plain breach of the warranty, the conse-
quence of which was to avoid the policy, for, hard as the artificial
rule may be, it is too firmly settled to be questioned that the breach
of an express warranty, whether material to the risk or not, whether
a loss happens through the breach or not, absolutely determines the
policy and the assured forfeits his rights under it. (*Chase* v. *Ham-
ilton Ins. Co.*, 20 N. Y. 52; *Stevens* v. *Commercial Mutual Ins.
Co.*, 26 id. 397; *Day* v. *Orient Mut. Ins. Co.*, 1 Daly, 13; *West-
fall* v. *Hudson River F. Ins. Co.*, 2 Duer, 490; 1 Phillips on
Ins. 418, ¶ 762.)

It is claimed, however, on the part of the appellant, that the
words "inland waters," as used in the policy, are not limited to
their ordinary signification, but that a usage existed respecting the
waters frequented by yachts, such as the *Fieseen*, in view of which
usage the policy was written, and that the warranty should be con-
strued by that usage, and a broader meaning applied to the words,
one that would include in the category of inland waters the roadstead
outside of Sandy Hook and as far as the yacht went out upon the
sea on the ninth of September. Evidence of usage to explain, or
rather to give effect to the meaning of the policy, is very commonly
resorted to in cases of this character; and as said by Mr. Phillips (1
Phillips on Ins. 73, ¶ 119): "The subject-matter of marine insurance
and other written mercantile contracts makes it necessary to go out of
the written instruments in order to interpret them, more frequently
than in most other contracts." But before usage can be appealed
to, there must be proof that there really is a usage; something
existing, and in connection with which the underwriter is assumed
to have taken the risk. All that is in evidence on the subject is,
that it is customary for many yachts and other craft of large and
small dimensions, whenever an international yacht race takes place,
to accompany the competing boats over an ocean course. This
scarcely establishes a usage of the character to qualify an express

warranty. International yacht races are of infrequent occurrence. That yachts covered by insurance go upon the ocean to follow them does not appear. This policy was written April 11, 1893. It is not shown that an international yacht race was in contemplation for the year during which the policy was to run. Attending the yacht race at Newport, and the custom of yachts to assemble at that port in the summer for the squadron races, does not establish a usage for the same reasons. All of this testimony is insufficient to prove that the parties contracted for anything other than what is expressed in the plain and accepted meaning of the words of the warranty.

The further contention is made that, the loss happening after the policy attached, and the breach of the warranty in no wise producing or contributing to the loss, but it being occasioned by independent causes, the plaintiff may recover, notwithstanding the breach. The learned counsel for the plaintiff admits that the English authorities are against this view, as they very decidedly are. The American cases of breaches of implied warranties of seaworthiness cited on the argument and in the appellant's brief do not establish a contrary rule affecting the express warranty contained in this policy.

We fail to see the pertinency of the argument made respecting lights carried by certain vessels, under the requirements of the navigation laws of the United States. That steamers plying between New York and Newport, and New York and Long Branch, and New York and Coney Island, carry the lights prescribed for vessels navigating inland waters in addition to those of ocean-going steamers is doubtless true; but they are the same lights required of coastwise steamers; and those plying between the places mentioned may be, and probably are, classed as such.

The judgment and order appealed from must be affirmed, with costs.

Van Brunt, P. J., Barrett, Williams and O'Brien, JJ., concurred.

Judgment and order affirmed, with costs.