GLENS FALLS PORTLAND CEMENT CO. v. TRAVELLERS' INS. CO.

(Supreme Court, Appellate Division, Third Department. December 2, 1896.)

1. INSURANCE—BREACH OF WARRANTY—WAIVER.
     A breach of warranty in an indemnity insurance policy is voidable only, and the assumption by the insurance company of a defense to an action for personal injuries against the insured, after knowledge of the facts in the case, is a waiver of the breach.

2. SAME—FOREIGN COMPANIES—NOTICE OF LOCAL LAWS.
     A foreign insurance company, admitted under the laws of New York to transact business within the state, is chargeable, in like manner as a domestic corporation, with notice of laws that affect its business.

3. SAME—STATUTORY DUTIES OF INSURED—WHEN WAIVER NOT UNLAWFUL.
     The waiver of a breach of warranty, in an indemnity insurance policy, that the insured will comply with all laws providing for the safety of persons, is not a ratification of the insured's omission of a statutory duty, and therefore against public policy, but is a waiver of advantage which might accrue from a breach of contract caused by an unlawful omission of duty.

Appeal from trial term, Warren county.

Action by the Glens Falls Portland Cement Company against the Travellers' Insurance Company on a policy of insurance. From a judgment in favor of plaintiff, entered on a verdict directed by the court, both parties consenting to a direction of a verdict, but each requesting it in its favor, and from an order denying a motion on the minutes for a new trial, defendant appeals. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Francis A. Smith, for appellant.

Edgar T. Brackett, for respondent.

LANDON, J.    Jasmin, an employé of the plaintiff in its cement manufactory, at Glens Falls, N. Y., while oiling the bearings of a revolving shaft, had his clothing caught by an uncovered set screw, five-eighths of an inch in diameter, projecting three-quarters of an inch from the collar of the shaft, and was in consequence whirled violently about the shaft and seriously injured.    Jasmin brought an action against the plaintiff, charging, among other things, the plaintiff with negligence in leaving the set screw unguarded, in violation of section 8, c. 673, Laws 1892, amending the "Factory Act," so called, and recovered judgment against the plaintiff for $2,000, besides costs, and issued execution thereon, which the plaintiff satisfied by paying $2,127.21, the amount due thereon.    This plaintiff then brought this action against this defendant to recover said sum upon an insurance policy issued by the defendant to the plaintiff, and in force at the time Jasmin was injured, insuring the plaintiff against loss from common-law or statutory liability to plaintiff's employés who might be accidentally injured in its employment.    The policy was issued upon the written application of the plaintiff, the statements in which are therein declared to be warranties, and the application is made part of the policy.    The policy also contains conditions which, so far as are here material, will be stated hereafter.

Upon the argument, the defendant's position was:    That the policy was void in its inception, because the set screw was at the date of its issue unguarded,—a fact clearly established by the evidence,—and thus there was a breach of the following provision of the application:

"The applicant promises to conduct all business and maintain all premises to which the proposed insurance may apply in strict compliance with all statutes, ordinances, and by-laws providing for the safety of persons."

That this provision of the application was promissory, and that, as the set screw was unguarded at the time of Jasmin's injury, and was the cause of it, the promissory guaranty was violated.

Upon the evidence we think the defendant was right in these contentions.    Cogswell v. Chubb, 1 App. Div. 95, 36 N. Y. Supp. 1076; Chase v. Insurance Co., 20 N. Y. 52; Jackson v. Insurance Co., 33 Hun, 60; Ripley v. Insurance Co., 30 N. Y. 136; Alexander v. Insurance Co., 66 N. Y. 464; First Nat. Bank of Ballstonspa v. Insurance Co. of North America, 50 N. Y. 45.

This brings us to the main question discussed before us,—whether the trial judge was authorized to find and hold that the defendant, with notice of the breach of the warranty, waived the forfeiture caused thereby.    It was among the conditions of the defendant's liability, as expressed in the policy:    (1) That the plaintiff should give the defendant immediate notice of the alleged injury, with full information; (2) that the defendant should have the sole right, and it should be its duty, to negotiate settlements and adjustments

of all claims made against the insured and covered by the policy; (3) that, if the plaintiff should be sued upon any claim covered by the policy, the defendant should, if it did not pay the full amount of its liability, defend such suit, and have control of the defense. The defense of the action of Jasmin against the plaintiff was at first assumed by this defendant, the insurance company, whose attorney interposed an answer in behalf of the plaintiff, the cement company, and took charge of the defense until Saturday evening preceding Monday, November 11, 1895, the day upon which the circuit convened in Warren county, at which the case was noticed for trial by the attorneys of both Jasmin and the cement company; Mr. Ingallsbee, under the employment of the insurance company, acting as attorney for the cement company. It was understood by all the parties that the case would be tried at that circuit. The insurance company, on the Saturday evening in question, gave the cement company notice that, owing to its recent discoveries in respect to the set screw, and the fact that the factory act was posted, under instructions from the factory inspector, in the cement factory, prior to the issue of the policy, the insurance company disclaimed liability under the policy, and declined to assume any further charge of the defense, but was willing to assist in it, and give the cement company the services of the attorney and counsel which the insurance company had retained in the case, but without responsibility for the result. The insurance company, by Mr. Harbison, its agent, had learned from Jasmin's attorneys that they would accept a judgment for $2,000 if the action should be undefended, and Mr. Harbison advised the cement company to settle upon that basis, still disclaiming responsibility. The cement company then employed counsel, who advised the cement company, under the circumstances, to leave the case undefended if Jasmin would limit his recovery to $2,000. This Jasmin's attorneys consented to do, and took judgment accordingly.

Assuming that the unguarded set screw was a breach of warranty, which went both to the inception and the continuance of the contract, then the cases are to the effect that the policy is not void, but voidable only, at the option of the insurer; that the insurer may waive the forfeiture, and take the benefit of the policy, but that, in order to charge him with such waiver, from his acts acknowledging the validity of the policy, it must be shown that he at the time of the waiver had knowledge of the facts constituting the forfeiture. McNally v. Insurance Co., 137 N. Y. 389, 33 N. E. 475; Roby v. Insurance Co., 120 N. Y. 510, 24 N. E. 808; Trippe v. Society, 140 N. Y. 23, 35 N. E. 316; Titus v. Insurance Co., 81 N. Y. 410. We think the evidence justified the finding that the insurance company knew all the material facts respecting the set screw when it served the answer for this plaintiff in the Jasmin action, and, although a nonresident of the state, was chargeable with knowledge of the law requiring set screws to be guarded. Jasmin was injured December 28, 1894. The plaintiff gave notice of it to Little & Carson, the defendant's agents at Glens Falls. Little & Carson, December 31, 1894, wrote to the defendant a letter, which defendant received at

Hartford, Conn., its place of business, in which they stated that one of plaintiff's "employés, * * * while engaged in oiling a bearing, was caught by a set screw in a revolving shaft by his clothing," and thereby injured. This was notice that the set screw was unguarded; else, how could the employé have been caught by it? But it was not, of itself, notice, in fact, that the statute required the set screw to be guarded.

The defendant urges that, as it was a nonresident of this state, it was not chargeable with knowledge of the factory act, since it cannot be presumed to know the laws of a foreign state. Stedman v. Davis, 93 N. Y. 32. But to this rule there is this exception, stated in Bank v. Spalding, 9 N. Y. 62:

"Where an agreement is made in one state, to be executed in another, as the laws of the latter country prevail in determining the validity of the contract, it is reasonable that the parties should be presumed to know the law of the country in reference to which they are contracting."

This contract was countersigned by Little & Carson, defendant's agents in this state, was delivered to plaintiff in this state, and was to be performed in this state. We also think that a foreign insurance corporation, admitted under our laws to do business within this state, is chargeable, in like manner as a domestic corporation, with notice of such of our laws as affect that business. But, treating defendant's knowledge of our law as a question of fact, it appears that on April 29, 1895, Messrs. Potter & Kellogg, attorneys at Glens Falls, sent a letter to the plaintiff in which they stated that Jasmin "has placed with us, for our attention, a claim against you for personal injuries which he states he received by being caught in a set screw, * * * the said set screw having been left unguarded, contrary to the provisions of law." This letter the plaintiff handed to Little, Carson & Loomis, defendant's agents, who mailed it to the defendant the following day. This was notice sufficient to put the defendant upon inquiry as to our law in regard to set screws, and to justify the finding that it obtained the knowledge which such inquiry, diligently pursued, would secure. True, the letter, if disregarded, might not be followed by a suit, but the facts were not such as to justify reliance upon Jasmin's abandonment of his claim. If the insurance company had then notified the cement company that it denied the validity of the policy, the latter company might possibly have settled with Jasmin upon more favorable terms than it afterwards did. The insurance company waited, and thus led the cement company to wait. September 3, 1895, the summons and complaint in the Jasmin suit were served upon this plaintiff, and by it placed in defendant's hands three days later. The defendant was then called upon, under the terms of its policy, to take its position, certainly before October 3, 1895, when it served the answer to Jasmin's complaint. It employed an attorney, and through him made all the examination which it desired. The plaintiff gave him all the information and assistance requested, and withheld no material fact. The result was the defendant elected to recognize the validity of the policy, and assume its liability under

it as indemnitor and protector of the plaintiff against the Jasmin claim.

There was one fact which the defendant claims it did not learn until the day it abandoned plaintiff's defense, and that was that, under the direction of the factory inspector, a copy of the factory act had been posted in plaintiff's factory before the policy was issued, and was there when issued.   We do not deem this material. It was the duty of the plaintiff to guard properly this set screw, irrespective of the action of the factory inspector.

The defendant insists that, since it was a violation of the statute to leave the set screw unguarded, public policy forbade the defendant to waive or condone the violation of the law, and thus it could not waive the forfeiture thereby incurred.   But the defendant did not ratify the plaintiff's omission.   It waived the advantage which might accrue from it.   The cases cited by the appellant relate to acts forbidden and not to omissions forbidden.   The distinction between waiving the benefit caused by an unlawful omission, and making a contract to produce or continue the omission, seems to be clear.   The omission may be a mere want of forethought; the contract is a premeditated wrong,—the one, an accident; the other, a crime.   The statute may treat the accident as an offense, so far as the punishment of the negligent person is concerned; but a conviction for an omission of duty must be for a culpable omission, and whether culpable is a fact for the jury under the circumstances. People v. Melius, 1 N. Y. Cr. R. 39; People v. Buddensieck, 4 N. Y. Cr. R. 230.   Crimes by commission are essentially different from crimes by omission.   Every one may be presumed to intend the natural consequences of his acts, and in some cases of his omissions; but he cannot be presumed to have intended, or to have intentionally risked, the consequences of an omission to which his attention was first called by the consequences resulting from it. We cannot say that this omission was criminally culpable, and therefore cannot say that the waiver of the benefit accruing to the defendant because of it was in any sense the subsequent ratification of a precedent offense.

This set screw was 15 feet above the floor.   It seems that it did not need to be approached except for oiling the axle of the shaft in the collar of which it was placed. The learned trial judge thought its position guarded it.   We are constrained to hold otherwise, but in so holding we have the demonstration, in the injury to Jasmin, that it ought to have been guarded; and we infer, thence, that the legislature was more prudent than the plaintiff.   The best of men are sometimes careless, and may need indemnity against loss resulting from their carelessness.   The statute permits this kind of insurance.   Insurance Law (Laws 1892, c. 690, § 70, subd. 3).

The plaintiff bought the insurance the defendant was permitted to sell.   Had there been an intention to violate the law in making the contract, doubtless the rule would be different.   We are unable to see, from the record, that the allegations of error now urged by the defendant to the exclusion of testimony offered by it relate to material testimony.   We are not advised what Mr. Harris said to

plaintiff's superintendent, what further information the defendant requested of plaintiff, or what commission the plaintiff's superintendent made to Mr. Harbison; and the court did not need to receive the factory inspector's copy of the factory act in order to hold the plaintiff advised in respect to that statute.

The judgment should be affirmed, with costs. All concur.