ALEXANDER, RAMSAY & KERR, Inc., v NATIONAL UNION FIRE INS. CO. et al.

No. 352.

Circuit Court of Appeals, Second Circuit.

June 19, 1939.

Barber, Matters, Gay & Vander Clute, of New York City (Carl F. Vander Clute, of New York City, of counsel), for appellants.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Roger Siddall, of New York City, of counsel), for appellee.

Before L. HAND, CHASE, and PATTERSON, Circuit Judges.

PATTERSON, Circuit Judge.

The defendants in July, 1934, wrote policies insuring the plaintiff's dredge against fire. A fire broke out on the dredge in January, 1935, and it became a total loss. Prior to 1928 the dredge had been used to dig a drainage canal near the Everglades in the interior of Florida. Work having been suspended for lack of funds, the dredge was laid up in 1928 near Miles City, Florida, in a short spur off the canal, and there it remained idle until lost by fire. It had been expected that the dredge would be used to dig a connecting canal, but the plan was never realized. As the situation was, the dredge was more or less immobile; it could be moved only by dismantling or by its own digging. The policy of the National Union Fire Insurance Company contained a warranty, "Warranted confined to navigation of inland and coastwise waters of the United States", and a further warranty that the dredge was then "in good safety"; the policy also gave privilege to lay up. The policies of the other insurers contained a warranty, "Warranted confined to waters of the inland and coastwise waters of the United States of America," and a statement "Warranted same terms and conditions as and to follow the settlements National Union Fire Insurance Company." In insurers' parlance the National Union was the "leading company" and the others the "following companies".

The plaintiff brought the present action to recover on the policies, the complaint merely alleging issuance of the policies and loss of the dredge by fire. The defendants' answer set up as defenses breach of the warranty confining the dredge to inland and coastwise waters, breach of the warranty as to good safety, and concealment of facts material to the risk. The plaintiff then served an amended complaint, adding a cause of action for reformation of the policies; it alleged that the National Union knew of the dredge being laid up in the drainage canal and that if the location was a breach of the warranty, the warranty was inserted in the policies by mutual mistake and should be stricken from them

At the trial one Benfield, who placed the insurance in the plaintiff's behalf, tes-

tified that he had told Michel, the man in charge of the matter for the National Union, about the dredge, the location, the laying up and the hope that it would resume work, and had shown him an application for insurance on the dredge in 1930, in which full details concerning it were given. Michel, called by the defendants, denied having had any such talk with Benfield and denied having been shown the 1930 application. There was no evidence as to what had occurred when the insurance was placed with the other defendants. At the close of the proof the court denied the defendants' motion for directed verdict and submitted to the jury the following questions:

1. Was the plaintiff, through its representative Benfield, guilty of concealment of facts material to the risk?

2. Was the language of the warranty "Warranted confined to navigation of inland and coastwise waters of the United States" intended by the parties to prohibit the laying up of the dredge in such a place as she was at the issuance of the policy?

3. Was the dredge in good safety when the policy was issued?

4. Did the defendants know the location and circumstances surrounding the location of the dredge when the policies were issued?

The jury's answers having been in favor of the plaintiff as to each question, the court entered judgment for the plaintiff for the full amount of the policies, some $9,500 altogether.

■ The plaintiff made out a prima facie case when it showed issuance of the policies and loss by fire. The defendants take the position that their affirmative defenses were proved by undisputed evidence and that the court should have dismissed the case or directed a verdict in their favor.

■ The defendants urge that on the uncontradicted evidence the warranty confining the dredge to inland and coastwise waters was broken. The argument is that the words "inland waters of the United States" in the policies mean the same as inland waters which are navigable and subject to federal control, and concededly neither the drainage canal nor the spur in which the dredge lay were navigable waters subject to federal control. But there is no sound reason for limiting the words to the legalistic sense in which the defend-

ants would have them read. By their natural meaning they cover all inland waters within the geographical boundaries of the United States. The parties were dealing with a dredge, and a dredge would be quite likely to operate or be laid up on a body of water non-navigable in the admiralty sense. It will not do to lay stress on the word "navigation" in the National Union policy, for that word is not to be found in the warranty of the policies of the "following companies", and both sides agree that the warranties in all the policies were of the same dimensions. The warranty was in substance a stipulation that the insurance should not cover the dredge if it ventured on the high seas. Cogswell v. Chubb, 1 App.Div. 93, 36 N.Y.S. 1076. We are of opinion that the dredge was in inland waters of the United States and that the warranty was not broken. It is therefore unnecessary to consider whether the policies should be reformed to omit the warranty.

■■ It is equally clear that the warranty of good safety was not broken. A warranty that the property insured is in good safety at commencement of the risk is an ancient one in marine insurance. It is a narrow warranty, a stipulation by the insured that the insurance will not attach in case the property shall have been lost or damaged at the appointed time. There is no substance in the assertion that the dredge was not in good safety when the policies took effect.

■ The point is made that there was concealment of facts affecting the risk. The rule in marine insurance is that the insured must disclose to the insurer all circumstances known to him and unknown to the insurer which materially affect the risk. Btesh v. Royal Insurance Co., Ltd., 2 Cir., 49 F.2d 720; King v. Aetna Insurance Co., 2 Cir., 54 F.2d 253. It may be assumed in favor of the insurers that the fact that the dredge had been laid up for some years at a sparsely settled place in the interior of Florida was a fact materially affecting the risk. But the plaintiff presented evidence, by testimony of Benfield, that this fact was revealed to the National Union. The National Union agent contradicted Benfield. Whether the plaintiff concealed facts materially relevant to the risk was thus a question on which the evidence was in conflict. The court submitted the question to the jury in an able and comprehensive charge, to which the defendants

took no exceptions. The verdict of the jury that the defendants knew the location of the dredge and that there was no concealment of facts material to the risk is conclusive.

■ The remaining point pressed by the defendants is misrepresentation in obtaining the policies. According to the plaintiff's witness Benfield, he exhibited to the agent for the National Union a paper which was an application for insurance dated in 1930 and which gave detailed information on the dredge. The defendants say that in two respects the paper was untrue; in answer to the question "Are all stoves securely fastened on deck", it was stated "No stoves", and in answer to the question "Is there a night and day watchman", it was stated "Sleeps on board." The defendants' situation in this respect is not a strong one, for the defense of misrepresentation by the insured was not pleaded and they took the position on the trial that their agent never saw the paper containing the statements said to have been untrue. Apart from that, it is by no means clear that the statements were untrue. There was no evidence that the watchman did not sleep on board at the time when the representation was made. As to stoves, the family which lived on the dredge had two stoves at the time. The stoves were their own property, whereas the inquiry about stoves and the answer given had to do with the regular equipment of the dredge. We cannot say that the court should have directed a verdict for the defendants on the issue of misrepresentation.

We find no error in the record. The judgment will be affirmed.