Hubert R. SHAW, Plaintiff-Appellant,

v.

William Beecher SCOVILLE, Defendant-Appellee.

No. 111, Docket 30425.

United States Court of Appeals
Second Circuit.

Argued Oct. 28, 1966.

Decided Dec. 13, 1966.

———◇———

Morgan P. Ames, Stamford, Conn., for plaintiff-appellant.

Ralph C. Dixon, Hartford, Conn., for defendant-appellee.

Before LUMBARD, Chief Judge, and MOORE and KAUFMAN, Circuit Judges.

LUMBARD, Chief Judge:

This is an appeal by plaintiff Hubert Shaw, a New York resident, from a judgment entered in the District Court of Connecticut on October 21, 1965, upon a jury verdict in a diversity malpractice and breach of contract action. Responding to special interrogatories, the jury found that the defendant, Dr. William B. Scoville, a Hartford neurosurgeon, was neither negligent in the performance of an exploratory operation on Mr. Shaw, nor in failing to advise Shaw that deaf-ness might occur from that operation. The jury also found that there was no contract not to impair Shaw's hearing. The appellant seeks reversal because of errors in exclusion of evidence and the trial judge's comment in his charge. We find no errors requiring a new trial and affirm the judgment.

Hubert Shaw came to Dr. Scoville on the recommendation of Dr. Anderson, Dean of Neurosurgery at the University of California, with the purpose of reliev-ing a long-time facial tic. The parties first met on March 3, 1962, in Dr. Sco-ville's office in Hartford. Dr. Scoville explained his operative technique in fair detail, warned that the operation was experimental and might not be successful and explained that deafness to the left ear might occur if the auditory artery were cut. He recommended against the operation as he thought the tic was not severe, but nevertheless agreed to do it. It was Dr. Scoville's belief that the tic might be caused by the pulsation of the auditory artery, on the assumption that it had come in close contact with the facial nerve. An exploratory operation was performed on July 2, 1962. After making an incision below the left ear, Dr. Scoville had to lay aside the auditory nerve which lies directly atop the facial nerve. He did this by gently stroking it, causing it to relax. He then went on to separate the facial nerve from the audi-tory artery with a blunt hook, and insert-ed a minute wedge of surgical Gelfoam between them. It was hoped that the Gelfoam, a substance similar to sponge rubber, would absorb the pulsation, and that within two weeks it would dissolve leaving the auditory artery in a new course, no longer resting against the fa-cial nerve, and the tic would be relieved. The operation was unsuccessful, and since that time the plaintiff has been unable to hear with his left ear.

Shaw claims, and the testimony of his expert witnesses makes it seem likely, that deafness resulted from the destruc-tion of his auditory artery, which in turn caused an atrophy of his auditory nerve. He does not allege that any of the jury's

findings are against the weight or sufficiency of the evidence.

Plaintiff contends that it was error to exclude from evidence and to deny him access to the record of a prior operation, performed on March 16, 1961, upon a certain woman patient which caused deafness of her left ear. It is conceded that the operations were in all aspects similar, with the exception that Dr. Scoville claimed that he purposely partially cauterized the woman's auditory artery and took the calculated risk that deafness might occur.

Plaintiff stated at trial that he sought to demonstrate a sufficient similarity between the operations so that the jury might find that Dr. Scoville knew on the basis of the prior operation that the risk of deafness was great and should have warned Shaw accordingly. Judge Blumenfeld refused to direct the defendant to make available to the plaintiff the record of the earlier operation on the grounds that it was cumulative on the issue of Dr. Scoville's knowledge that injury to the auditory artery might cause deafness, since Dr. Scoville freely admitted such knowledge on the stand, and further, it was otherwise inadmissible as prejudicial to the defendant, for the jury might have regarded it as prior negligence and allowed it to affect their judgment as to whether or not the defendant was negligent in the present action.

We see no reason why the doctor's records of the prior operation on the woman should not at least have been made available to plaintiff's counsel in order that he might use this as a basis for cross-examining Dr. Scoville as to whether or not the operations were, in fact, similar. It is clear that Mr. Shaw's deafness was caused by inadvertence. If plaintiff's counsel could show from the records that the woman's deafness was also caused by inadvertent manipulation of the auditory artery, contrary to Dr. Scoville's assertions on the stand, he could have argued to the jury that Dr. Scoville should have given specific warning to Mr. Shaw.

The operation was new and admittedly experimental; there was little knowledge as to the inherent risks involved. It would be expected that a single similar prior operation resulting in inadvertent deafness, if that had been the case, would be an important consideration in the formation of the doctor's opinion. We think, therefore, that it was error for the trial judge to refuse to let plaintiff's attorney see the requested record. We see no reason why the plaintiff should be compelled to rely entirely on the defendant's statements as to how the prior deafness occurred, when there was a record available which might have proved otherwise. This is *not* to say that the trial judge could not have refused to admit the record into evidence, or curtailed any cross-examination based upon it if he considered that it unduly emphasized collateral issues and might lead to an undesirable multiplication of issues. The trial judge has considerable discretion in matters concerning admissibility. Depending upon the use to which information in the record might be put, the trial judge could properly have excluded the woman's record for the reasons he stated, or admitted it at a later time, as both relevant and non-cumulative,[1] if and when plaintiff made his request for its admission into evidence at trial.[2] We here decide no more than that the records should have been made available to plaintiff's counsel.

Nevertheless, we find that the error in refusing to require production of the records was not so harmful as to require reversal, see Rule 61, Federal Rules of

---

1. Defendant would then be entitled to a limiting instruction that the jury should not consider the prior operation on the issue of negligence in performance of the operation, see generally 1 Wigmore, Evidence § 13 (3d ed. 1940).

2. There is no doctor-patient privilege in Connecticut which might otherwise prevent the use of or the admission of the woman's record in evidence, see State v. Hanna, 150 Conn. 457, 191 A.2d 124 (1963); Massachusetts Mut. Life Ins. v. Brei, 311 F.2d 463 (2 Cir. 1962).

Civil Procedure. We have carefully examined the woman's medical record and find nothing to indicate that the cauterization was inadvertent. Indeed, the only written statement which pertains to the operation clearly substantiates Dr. Scoville's assertions that he purposely partially cauterized the auditory nerve in the woman's case, and the operations did differ in that respect. Since the jury had all of this before it, and since the woman's file could not have turned up any additional or conflicting information, the error was not harmful and does not require a new trial.

■■ Plaintiff suggests in his brief on appeal that the record should have been admitted to allow him to attack Dr. Scoville's credibility and to show an unwarranted *variance* in procedure between the two operations, suggesting negligence in the performance of the latter. While again, there appears to be nothing of value in the woman's files to support these claims, we need not consider them on appeal. The significance of those records could not have been obvious to the district court, apart from plaintiff's asserted purpose to show a *similarity* between the operations. While an attorney is not required to make a specific offer of what he intends to prove, see Rule 43 (e), Federal Rules of Civil Procedure, when he does so he ought to mention all reasons not otherwise obvious, cf., Note, 33 N.C.L.Rev. 476 (1955), in order that the trial judge may have the opportunity to pass on the application in the light of all the considerations. As this was not done here, we do not consider the additional reasons which are urged on appeal, see Moss v. Hornig, 314 F.2d 89, 93 (2 Cir. 1963).

■ Plaintiff also cites as error Judge Blumenfeld's ruling excluding from evidence the manufacturer's instructions for using Gelfoam, which contains a list of five specific uses. Similarly, he appeals from Judge Blumenfeld's refusal to charge the jury on the effect of the alleged failure to follow the instructions. We think both rulings were proper. The list of specific uses was intended as a permissive and open ended category, and not restrictive as to use. Further, we think it clear that the manufacturer did not intend his general directions for use as a standard of care for doctors. Even if they were so intended, the appellant claims only that a caution against use in the area of arterial bleeding was disregarded, and there was no testimony that any such bleeding occurred. Shaw's only contention at trial was that Gelfoam created pressure on the artery which in turn caused its spasm and destruction.

■ Plaintiff's last assignment of error concerns Judge Blumenfeld's comment in his charge to the jury that a contract not to impair hearing, which the plaintiff claimed, "is not the ordinary implication in the patient-client relationship. It would be unique and unusual. But, of course, not impossible. * * *"

From a reading of the entire charge we think that Judge Blumenfeld made it abundantly clear that the jury was to decide the issue of whether or not there was a contract in fact, and we do not think the judge's comment on the "unique and unusual" nature of such a patient-doctor contract went so far beyond his discretion to comment on the evidence as to deprive the plaintiff of a fair trial.

Affirmed.

MOORE, Circuit Judge (concurring):

I concur in Chief Judge Lumbard's opinion except that portion thereof dealing with the Trial Judge's refusal to make available to plaintiff's counsel the Doctor's records of the prior operation. In my opinion, the Trial Judge properly exercised his discretion in ruling as he did. Although I would find no error had he directed their production for purposes of cross-examination, I cannot characterize as error his refusal. Even on cross-examination, unless closely supervised by the court (and restriction of cross-examination is usually not favored), there would have been a real danger that there might well have been injected into this case a trial of all the facts and circumstances surrounding the prior operation,

thus very possibly diverting the jury's attention from this case to the prejudice of the defendant. Plaintiff's counsel was aware of the prior operation and had full opportunity to cross-examine.