Rowland BARNES, Administrator of the Estate of Evelyn Elizabeth Adams, deceased, Appellee,

v.

Herman TENIN, Appellant.

No. 593, Docket 34108.

United States Court of Appeals, Second Circuit.

Argued March 11, 1970.

Decided April 2, 1970.

David Skolnick, New Haven, Conn. (Alexander Winnick, New Haven, Conn., on the brief), for appellant.

Thomas P. Clifford, New Haven Conn. (Richard G. Adams, New Haven, Conn., on the brief), for appellee.

Before SMITH, KAUFMAN and HAYS, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

This wrongful death action arises from the alleged malpractice of appellant Dr. Herman Tenin, an oral surgeon, in an operation he performed on March 8, 1965. The events of that day are not the subject of much dispute.[1] Plaintiff's decedent Mrs. Evelyn Adams visited Dr. Tenin's office to undergo a full mouth extraction. Upon Mrs. Adams's arrival at approximately 8:30 a. m., Mrs. Ann Barlow, one of Dr. Tenin's assistants, a licensed practical nurse, took her blood pressure and administered a sedative.

The operation commenced at 9 a. m. with the administration of anesthesia by Dr. Tenin and Mrs. Barlow. Mrs. Adams received injections of sodium brevital, a general anesthetic, and xylocaine, a local anesthetic. A second general anesthetic, a mixture of nitrous oxide and oxygen, was administered throughout the operation by means of a nosepiece connected to an anesthesia machine. Dr. Tenin apparently made no detailed examination to ensure this machine was in proper functioning order before commencing the oral surgery. Holding the nosepiece, making appropri-

---

1. Of course, in this appeal from a jury verdict in favor of the plaintiff, insofar as the facts are disputed, we must take that view of the evidence most favorable to the plaintiff-appellee. See Chicago, St. P., M. & O. Ry. v. Kulp, 102 F.2d 352 (8th Cir.), *cert. denied,* 307 U.S. 636, 59 S.Ct. 1032, 83 L.Ed. 1518 (1939); cf. Alexander, Ramsay & Kerr, Inc. v. National Union Fire Ins. Co., 104 F.2d 1006 (2d Cir. 1939); United States v. Kahaner, 317 F.2d 459 (2d Cir. 1963).

ate adjustments in the settings on the anesthesia machine, and administering additional sodium brevital during the extraction were the responsibilities of Mrs. Barlow, whose formal training in anesthetics was extremely limited. Dr. Tenin's second assistant, Miss Gerry Kaplan, a high school graduate with no medical or dental assistant's training, was assigned the task of suctioning fluid from Mrs. Adams's mouth while the extraction was in process.

Because considerable difficulty in performing some of the initial extractions was experienced by Dr. Tenin, the operation was prolonged to an hour and forty-five minutes, a time span one hour longer than anticipated. Moreover, shortly before the mid-point in the operation, Miss Kaplan began to suffer nausea and, although she had no experience in the administration of anesthetics, was directed to hold the anesthesia nosepiece so that Mrs. Barlow would be freed to suction. A series of complications then followed in rapid succession. A change in color in the region of her mouth and irregularities in her breathing indicated that Mrs. Adams was suffering from cyanosis, a condition resulting from lack of oxygen in the bloodstream. But Dr. Tenin did not discontinue the operation at this time. Instead, the machine was adjusted to administer a higher percentage of oxygen, and additional teeth were removed when normal coloration returned. The same course was followed when there were additional indications of lack of oxygen. Finally, dark-colored blood and labored, gasping breathing warned of a most serious cyanotic condition. There is some dispute in the testimony whether at this point Dr. Tenin discontinued the procedure immediately or continued for a brief period with the extractions. In any event, the operation was halted shortly thereafter, and proce-

dure to resuscitate Mrs. Adams instituted. She was lowered to a position with her head below her feet; a mask through which she could breath oxygen was placed over her face, and Dr. Tenin employed external cardiac massage. The record indicates that the Doctor did not resort to several procedures which would have ensured that the air passage to Mrs. Adams's trachea was clear. Moreover he failed to utilize any positive pressure, such as the bellows on the anesthesia machine or mouth-to-mouth resuscitation, in order to force the oxygen to her lungs. We are informed also that the rate of cardiac massage appears to have been far too slow to have been effective.

When Mrs. Adams's respiration failed to return to normal, an ambulance was summoned. Although Dr. Tenin was aware that the ambulance crew contained no doctor, he did not accompany Mrs. Adams to the hospital. She was dead on arrival at the Hospital of St. Raphael.

The plaintiff, Mrs. Adams's administrator, commenced this action in the District of Connecticut in July 1965, alleging that Dr. Tenin's negligence had caused the death of Mrs. Adams.[2] The one-week jury trial took place in March 1969 before Judge Zampano. At its conclusion, the jury returned a verdict in favor of the plaintiff in the amount of $100,000.

The single issue Dr. Tenin raises on appeal relates to the propriety of the district court's admission of certain testimony of Mrs. Barlow. The plaintiff called Mrs. Barlow as his witness and on direct examination sought, *inter alia,* to expose her lack of qualification to administer anesthesia. On cross-examination, the defendant attempted to rebut this contention and establish that Mrs. Barlow was an experienced and able as-

2. Jurisdiction was based upon diversity of citizenship. The plaintiff, Mrs. Adams's brother and administrator Mr. Barnes, is a *resident of Massachusetts;* the defendant Dr. Tenin is a resident of Connecticut, as was Mrs. Adams. The rec- ord contains no indication that Mr. Barnes was appointed in order to confer federal diversity jurisdiction. Cf. O'Brien v. AVCO Corp., 425 F.2d 1030 (2d Cir. 1969).

sistant. In order to do so, counsel for the defendant first elicited the information that beginning in 1962 she had assisted Dr. Tenin on more than 4000 occasions, then posed the questions "In all of that time did you ever have one—and I mean by that, incident similar to this incident? Where someone died?" There were no objections to these questions, and Mrs. Barlow responded in the negative.

Prior to Mrs. Barlow's redirect testimony, there occurred a colloquy between the court and counsel in the absence of the jury. It appears from this exchange that in December 1960, before the beginning of Mrs. Barlow's employment, a patient had died in Dr. Tenin's recovery room. Over the strenuous objections of the defendant, the plaintiff proposed to question Mrs. Barlow concerning this prior death. Although there was no showing that the death had occurred under circumstances similar to those surrounding the death of Mrs. Adams, the court determined after argument to admit the testimony. Accordingly, upon her return to the witness stand, Mrs. Barlow was asked whether "prior to the beginning of [her] employment * * * Dr. Tenin ever had· * * * an incident similar to this incident where somebody died?" She answered that she did know of such an incident. The court then proceeded to instruct the jury that

he had allowed the evidence to come in "in the interest of completeness" but cautioned "under no circumstances should that evidence be considered on the issue of negligence." Upon recross examination, the further revelation was made that she had no firsthand knowledge of the prior death but had heard of it from another employee and, even from that source, had learned little more than that there had been a death.

■ We have often emphasized that, "[t]he trial judge has considerable discretion in matters concerning admissibility." Shaw v. Scoville, 369 F.2d 909 (2d Cir. 1966). The district judge, familiar as he is with the intricacies and dynamics of the trial, is generally in a favored position to weigh the probative value of evidence against any harm its admission may occasion. We are also aware of the claim that the damaging evidence on redirect was allowed because of the trial judge's concern that if it had been excluded, the jury would have been left with the misleading impression that Dr. Tenin's safety record was without incident.[3] In the circumstances of this case, however, we believe it was unwise for the judge to admit any evidence of the prior death.[4] The law of Connecticut is strict in its insistence that evidence of a prior accident is admissible only if the surrounding circumstances are similar to those in the

3. The potentially misleading impression arose because the implications of Mrs. Barlow's statement that no deaths had occurred in Dr. Tenin's office during her extended period of employment went beyond establishing her ability as an assistant and suggested that a death was an unheard of event in the office. However, the plaintiff could have avoided this damaging evidence by objecting, which he failed to do, when the "no prior deaths" testimony was elicited by defendant. The likely response to such an objection would have been either exclusion of the evidence or a limiting instruction cautioning the jury to consider the statement only as tending to show Mrs. Barlow's qualifications to administer anesthesia.

4. Contrary to the contentions of the appellee, our decision in Shaw v. Scoville, su-

pra, a case involving prior medical accidents, does not require that we approve the decision of the district judge admitting the evidence of the prior death. A careful reading of Shaw discloses that it did not deal with the admission of evidence, but with the failure of the district court to make available to the plaintiff the defendant doctor's records relating to another patient. The patient whose records were sought had undergone an operation similar to Shaw's in all respects and thereafter had suffered a similar disability. Although we decided that the failure to make the records available was error, we refused to reverse the judgment in favor of the defendant because, despite the similarity of conditions, we concluded that the record could have added nothing of value to the trial.

case at bar. See, e.g., Wilkins v. G. Fox & Co., 125 Conn. 738, 7 A.2d 434 (1939). In the case at bar there was a complete absence of any evidence of similarity. Mrs. Barlow readily conceded on recross examination that, for all she knew, the prior death could have been precipitated by a sudden, unexpected heart attack rather than by any treatment administered by Dr. Tenin. Her lack of familiarity with the causes of the prior death highlights other faults in Mrs. Barlow's testimony. It was not based on personal knowledge and was clearly hearsay testimony. The value of this evidence, given its unsound foundation and its inadequate connection to the death of Mrs. Adams, was highly questionable. Conversely, the potential for prejudice was great. The jury learned that there had been not one, but two deaths, in this dentist's office. We are not convinced that the court's somewhat confusing limiting instruction, which warned the jury against considering the prior death on the issue of negligence but spoke of admission for the sake of "completeness," sufficed to dissipate this potential for prejudice or added anything.

■ We prefer, however, to follow the route we took in Shaw v. Scoville, see note 4 *supra,* and conclude that the error in admitting testimony with respect to prior medical accidents does not, in the circumstances of this case, require reversal. In order to evaluate the actual prejudice to Dr. Tenin caused by the disclosure of the prior death, we must view the judge's decision to admit Mrs. Barlow's statement in relation to all the evidence presented at trial and not as an abstract and isolated application of a principle of evidence. Examining the testimony as a whole, what appears at first to be prejudicial error pales before the overwhelming evidence of negligence. According to Dr. Nicholas Greene, a certified anesthesiologist and a professor of anesthesiology at Yale Medical School who testified for the plaintiff, Dr. Tenin's departures from the applicable standard of care were legion: the pre-operatory examination of the patient was perfunctory;

both the Doctor's knowledge of his anesthesia machine and his examination of it prior to beginning the extraction were deficient; his assistants were insufficiently trained; the operation should have been terminated as soon as signs of serious cyanosis appeared; the attempts at resuscitation were both inadequate and ineptly performed; Dr. Tenin's failure to accompany Mrs. Adams to the hospital was a departure from accepted medical practice. Dr. Saul Bahn, another oral surgeon who testified for the plaintiff, corroborated most of Dr. Greene's opinions. Even Dr. George Montano, Dr. Tenin's only expert witness, testified that administering sodium brevital to a patient throughout an operation which lasted an hour and forty-five minutes coupled with failure to halt the operation as soon as indications of a serious cyanotic condition became apparent represented deviations from the accepted standard of care. Viewing the court's erroneous admission of evidence in the light of this strong and virtually uncontradicted evidence of negligence, we see no purpose in returning this case for another trial.

Affirmed.