**MARKS v. SPITZ.**

Civ. No. 3281.

District Court, D. Massachusetts.

April 13, 1945.

Simon B. Stein, of Boston, Mass., for plaintiff.

Augustus H. Kaufman, of Boston, Mass., for defendant.

SWEENEY, District Judge.

This is a motion for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to recover a penalty under Section 205 (e) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix § 925 (e). For the purposes of this motion findings of fact are based on the pleadings and supporting affidavits.

### Findings of Fact

The plaintiff at all material times has been a tenant of Suite No. 1 in a certain apartment house located at No. 9 Babcock Street, Brookline, Massachusetts.

On August 20, 1942, the Price Administrator, acting under the authority of the Emergency Price Control Act, issued Maximum Rent Regulation. 45, to become effec-

tive November 1, 1942. This was subsequently amended by Maximum Rent Regulation 53, which included within its scope the Eastern Massachusetts Defense Rental Area, in which is located the Town of Brookline, County of Norfolk, Massachusetts. Section 1388.284 of Regulation 53, 7 F.R. 8596, provided in part as follows:

"Maximum rents shall be:

"(a) For housing accommodations rented on March 1, 1942, the rent for such accommodations on that date. * * *

"(e) For (1) newly constructed housing accommodations without priority rating first rented on or after the effective date of this Maximum Rent Regulation, or (2) housing accommodations changed on or after such effective date so as to result in an increase or decrease of the number of dwelling units in such housing accommodations or (3) housing accommodations not rented at any time between January 1, 1942 and such effective date, the first rent for such accommodations after the change or the effective date as the case may be. Within 30 days after so renting the landlord shall register the accommodations as provided in Section 1388.287. * * * " [1]

Pursuant to this regulation the defendant registered Suite No. 1 at No. 9 Babcock Street with the local branch of the Office of Price Administration fixing the maximum rent for the suite at $100 per month.

On or about May 2, 1944, the defendant leased this suite to the plaintiff for a term of 3½ months from May 15, 1944, at a monthly rental of $125, the plaintiff to pay all telephone, electricity, and gas charges. The total rent amounted to $437.50 and was paid in four instalments, the first on May 2, 1944, and the last on July 17, 1944.

On August 10, 1944, the defendant offered the plaintiff the privilege of remaining on the leased premises for an additional two weeks without charge, but the premises were surrendered by the plaintiff on or about August 30, 1944, in accordance with the terms of the original agreement.

During the course of his occupancy the plaintiff incurred charges of $25.83 for gas, electricity and telephone services. Under the terms of the agreement the plaintiff was to reimburse the defendant for the use of such services. This he has thus far failed to do.

The defendant maintains that, in computing the amount of overcharge for the determination of the violation of the maximum rent regulations, this $25.83 item should be treated as an element of the legal rent, properly chargeable for the premises. In addition, the defendant contends that the voluntary extension of the period of the lease operates to spread the rental charges over 4 months, rather than 3½ months.

If the defendant's position is accepted the legal rent for the premises would amount to $400 ($100 per month for 4 months) plus $25.83, or a total of $425.83. Since the actual payments aggregated $437.50, the amount of overcharge would be $11.67. Under the plaintiff's view the maximum legal rent was $350 ($100 for 3½ months) and the amount of overcharge $87.50.

The defendant in his answer counterclaims for damages caused by the plaintiff to the premises and his personal property therein to the extent of $200.

Conclusions of Law

Section 205 (e) of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix § 925 (e) allows a civil action by a private person either to recover $50 or treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater. In the instant case it is clear that the overcharge amounted to $87.50. When the final payment was made on July 17, 1944, a total of $437.50 had been paid for a contemplated 3½ month period for which the maximum legal rental had been fixed at $350. The subsequent tender of an additional two week period by the defendant cannot operate retroactively to reduce the quantum of the overcharge. Gilbert v. Thierry, D.C., 58 F. Supp. 235, aff'd, 1 Cir., 147 F.2d 603. The contention with regard to the bills for telephone, gas and electricity services is equally unsupportable. This item involves the same element of retroactive application. The defendant will not be heard to say that a subsequent failure to reimburse effectuates a reduction in the amount of the initial overcharge.

In his answer the defendant sets forth a counterclaim for damages to the premises in the amount of $200. The issue presented is whether a counterclaim may properly be entertained by this Court in an

---

[1] Maximum Rent Regulations were redesignated Rent Regulation for Housing, 8 F.R. 7322.

action grounded on Section 205 (e) of the Emergency Price Control Act of 1942. In allowing treble damages for violation of maximum price regulations Congress has adopted the quasi-criminal technique of the Sherman Act and others where there is a strong element of penalty in the judgment obtained by an aggrieved litigant in a civil action. Despite this punitive element the action still remains civil in nature and the plaintiff cannot escape the obligations imposed on litigants by the Federal Rules of Civil Procedure. Rule 13 has as its objective the settlement in one action of all controversies between the parties. This aim can only be advanced by a liberal counterclaim practice.

When the plaintiff is awarded treble damages for the rental overcharge the purpose of the statute is fulfilled. But there is a concomitant interest in facilitating the process of litigation, and avoiding a multiplicity of suits. The penal element in the statute should not be decisive on the question of allowance of the counterclaim, provided a jurisdictional basis is established. In a suit under the Sherman Act for an injunction and treble damages a counterclaim by a third-party defendant has been allowed. Eastern States Petroleum Co. v. Asiatic Petroleum Corp., D. C., 28 F.Supp. 279.

■ ■ Although the statutory foundation of the plaintiff's action is not in itself fatal to the allowance of the counterclaim, it is determinative of the nature of the claim. The defendant's counterclaim for waste does not arise "out of the transaction or occurrence that is the subject matter of the opposing party's claim * * *." Rule 13 (a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. It is rather a permissive claim and governed by Rule 13 (b). A compulsory counterclaim is ancillary to the main action and derives its jurisdictional support therefrom. United States to use and for Benefit of Foster Wheeler Corp. v. American Surety Co., of New York, D. C., 25 F.Supp. 700. But a permissive counterclaim, since it is unrelated to the main claim, requires an independent jurisdictional basis to support it. Donnelly Garment Co. v. International Ladies' Garment Workers Union, D. C., 47 F.Supp. 67. No such independent jurisdictional grounds appear in the instant case.

■ One exception has been noted to this general rule. Where the counterclaim is in the nature of set-off, and is used defensively rather than affirmatively, no separate federal jurisdictional basis for the set-off need be established. 1 Moore, Federal Practice (1938), § 13.03, p. 696. Set-off began as an equitable remedy in England, and was later by statute made available at law. It came to the United States as part of the common law. It is a counter-demand which a defendant has against the plaintiff arising out of a transaction extrinsic to that out of which the primary claim arose. In re Monongahela Rye Liquors, Inc., 3 Cir., 141 F.2d 864. The claim must be liquidated or capable of liquidation and grow out of a contract or judgment. 1 Moore, supra, § 13.01, p. 667. This is in accord with Massachusetts practice. Gen.Laws (Ter.Ed.) Mass. c. 232, § 1. The defendant's demand is clearly not within the set-off exception, and must fall in the absence of independent jurisdictional support. The Federal Rules of Civil Procedure are not to be construed as an instrument for the extension of the jurisdiction of the district courts. Rule 82, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The motion for summary judgment is granted. There is no jurisdictional basis to entertain the counterclaim.