391 F.2d 156
 John P. O'CONNELL, R. A. Gallo and Charles Doyle, etc., et al., Plaintiffs-Appellees,
Wayne W. Delaney, Dorrence E. Neu, Glen L. Thompson and John A. Bish, etc., et al., Intervenors-Plaintiffs-Appellees,
v.
ERIE LACKAWANNA RAILROAD COMPANY, a corporation, Defendant, and
Brotherhood of Railroad Trainmen, an Unincorporated Association et al., Defendants-Appellants.
 No. 244.
 Docket 31809.
 United States Court of Appeals Second Circuit.
 Argued January 3, 1968.
 Decided March 5, 1968.
 
 Lee Leibik, Chicago, Ill. (Ruth Weyand, Chicago, Ill., on the brief), for plaintiffs-appellees and intervenors-plaintiffs-appellees.
 Arnold B. Elkind, New York City, for defendants-appellants.
 Before LUMBARD, Chief Judge, MOORE and FRIENDLY, Circuit Judges.
 LUMBARD, Chief Judge:
 
 
 1
 Defendants appeal from a judgment which found strict union shop clauses in a railroad collective bargaining agreement void and enjoined the appellants from requiring membership in the appellant union as a condition of continued employment. Appellees successfully argued on motion for preliminary injunction before Judge Herlands, 268 F.Supp. 397 (S.D.N.Y.1967), and on motion for summary judgment and a permanent injunction before Judge Palmieri, that the union shop clause appellants negotiated with the railroad violates the clear language of Section 2, Eleventh of the Railway Labor Act, 45 U.S.C. 152, Eleventh, and that the union and railroad could not lawfully condition employment upon membership in appellant union even though the union is the sole bargaining agent for all of the railroad's employees. Jurisdiction is based upon 28 U.S.C. § 1337 and the Declaratory Judgment Act, 28 U.S.C. § 2201.
 
 
 2
 Appellants concede that if the words of Section 2, Eleventh of the Railway Labor Act are given their natural meaning, the agreement is invalid.[1] However, they ask the court to avoid "the melancholy irrationalism of interpreting subsection (c) literally." We agree with Judge Herlands that there is no compelling indication of legislative intent contrary to the clear words of the statute, nor are the results of construing the words as they were written so absurd as to require the strained construction for which appellants contend. We affirm.
 
 
 3
 The suit was brought by the Switchmen's Union of North America, AFL-CIO, and three yard service employees of the Erie Lackawanna Railroad Company on behalf of the more than 500 members of the Switchmen's Union employed by the Erie Lackawanna against defendant-appellant Brotherhood of Railway Trainmen and Erie Lackawanna.
 
 
 4
 Prior to the merger of the Delaware, Lackawanna & Western R.R. Co. and the Erie Railroad in 1960, plaintiff Switchmen's Union had been the recognized bargaining representative of the yard foremen, helpers and switch-tenders employed by the Lackawanna Railroad. Appellant Brotherhood represented these same crafts and classes on the Erie Railroad.
 
 
 5
 Following enactment of the Union Shop Amendment to the Railway Labor Act in January 1951, both unions entered union shop contracts with the railroads with which they had collective bargaining agreements. They incorporated into the contracts the language of Section 2, Eleventh of the Railway Labor Act as amended, 45 U.S.C. 152, Eleventh (1964), and construed the union shop provisions so that membership in either Switchmen's Union or Order of Railway Conductors satisfied the membership requirement of the Brotherhood's contract and membership in the Brotherhood satisfied the membership and requirement of the Switchmen's contract.
 
 
 6
 When the two railroads merged in 1960, the National Mediation Board conducted an election among all the yard service employees of the merged railroads. The Brotherhood won from the Switchmen's Union by 43 votes out of a total of 1943 votes cast. In a representation election in November 1967 the Brotherhood received 941 votes to the Switchmen's Union's 695. From 1960 until March 1967, appellant Union and defendant railroad construed and applied the union shop provisions of the contract so that membership in either the Switchmen's Union or Order of Railway Conductors satisfied the membership requirement.
 
 
 7
 On March 14, 1967 the Erie Lackawanna and appellant entered a collective bargaining agreement which provided:
 
 
 8
 "It is agreed, as a condition of continued employment, that within sixty calendar days following the beginning of such employment, all conductors, ticket collectors, baggagemen, and trainmen of the Erie Lackawanna Railroad Company, former DL&W District, yard service employees engaged in yard service in the New York Terminal Yards * * * represented by the Brotherhood of Railroad Trainmen (Eastern District) shall become and remain members of the said Brotherhood: Provided, that this agreement shall not require such condition of employment with respect to employees to whom membership is not available upon the same terms and conditions as are generally applicable to any other member or with respect to employees to whom membership has been denied or terminated for any reason other than the failure of the employee to tender the periodic dues, initiation fees and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership in the Brotherhood of Railroad Trainmen."
 
 
 9
 On April 4, 1967 the same parties entered a similar contract with respect to employees of the Erie District requiring them to become and remain members of appellant union as a condition of continued employment.
 
 
 10
 In granting a preliminary injunction against enforcement of this union shop provision, Judge Herlands found that the union shop agreements entered in 1967 violated the Railway Labor Act because they failed to permit employees to satisfy the membership requirements of the contract through membership in any union national in scope admitting to membership employees within the crafts or classes covered by the First Division of the National Railroad Adjustment Board. 268 F.Supp. 397 (SDNY 1967). After the preliminary injunction was granted, the Order of Railway Conductors and Brakemen and four of its members suing on behalf of the more than 225 members of the Order employed by the Erie Lackawanna were granted leave to intervene. On July 25, 1967, Judge Palmieri granted plaintiffs' motion for summary judgment and subsequently issued a permanent injunction. He denied defendants' cross-motion for summary judgment and entered judgment for plaintiff on appellant's counterclaim.
 
 
 11
 We believe that the legislative history of the section shows that it was meant to permit membership in any union national in scope admitting to membership employees within the crafts or classes covered by the First Division of the National Railroad Adjustment Board to satisfy the union shop requirement of a contract pursuant to section 2, Eleventh of the Railway Labor Act.
 
 
 12
 The Seventh Circuit recently has reached the same conclusion, Birkholz v. Dirks, 391 F.2d 289 (7th Cir. Feb. 12, 1968).
 
 
 13
 In 1934 the railway unions agreed to amendments to the Railway Labor Act which prohibited all union shop agreements in order to reduce the strength of company unions. S.Rep.No. 2262, 81st Cong., 2d Sess., pp. 2-3 (1950); U. S. Code Congressional Service 1950, p. 4319; Hearings on H.R. 7789 before Committee on Interstate and Foreign Commerce, 81st Cong., 2d Sess., pp. 3-4, 7-8, 16-17 (1950). See Pennsylvania R. R. Co. v. Rychlik, 352 U.S. 480, 489, 77 S. Ct. 421, 1 L.Ed.2d 480 (1957). By 1950 with the virtual elimination of company unions, the situation had changed so that twenty-one railway labor organizations, acting through the Railway Labor Executives Association, sponsored a bill to permit railway unions to enter union shop agreements similar to those authorized under the National Labor Relations Act, 29 U.S.C. §§ 157, 158.
 
 
 14
 The bill which was originally introduced, S. 3295, 81st Cong., 2d Sess., H.R. 7789, 81st Cong., 2d Sess. (1950), contained only one limitation: that the contracting labor organization must not deny any employee membership or expel him because of membership in any other labor organization. George M. Harrison, spokesman for the Association, testified that the reason for the provision was to permit an employee to retain membership in the union representing the craft or class in which he was mainly employed after temporary promotion or demotion to a different craft or class. He said:
 
 
 15
 "Unlike most collective-bargaining representatives in outside industry, there are those in the railroad industry which recognize and protect the rights of employees who, because of the nature of their work, move back and forth across craft or class lines, and consequently move from the rules and working conditions of one collective-bargaining agreement to another. Good examples are those employees in the firemen's craft or class and those in the engineers' craft or class. The ordinary line of promotion for a fireman is to the position of engineer, and in a reduction of forces the engineer returns to a fireman's position. These two crafts or classes usually are represented by different organizations. Conceivably, either the firemen's or engineers' organizations, or any other organization concerned with the movement of employees back and forth from one craft or class to another, could deny membership to employees who are members of another labor organization, and under a union-shop agreement endeavor to compel a carrier to discharge an employee whom the union would not accept because of his membership in another union.
 
 
 16
 "[I]t was deemed advisable to make this restriction absolutely clear so that employment could not be denied because a union refused to accept an employee into membership because he belonged to another union. That is the purpose of the phrase on lines 14 and 15 of page 2."
 
 
 17
 Hearings on S. 3295 Before a Subcomm. of the Comm. on Labor and Public Welfare, 81st Cong., 2d Sess., 18-19. See also Hearings on H.R. 7789 before the Comm. on Interstate and Foreign Commerce, 81st Cong., 2d Sess., 13.
 
 
 18
 However, this wording still created a problem for the railroad operating unions and they opposed the bill because it would have permitted a union to demand that employees working in the craft or class which the union represented belong to the union which was their bargaining representative as well as to the union to which they already belonged. As Mr. Justice Harlan said in Penn. RR v. Rychlik, 352 U.S. 480, 490, 77 S.Ct. 421, 426, 1 L.Ed.2d 480 (1957):
 
 
 19
 "[T]he hearings on the bill revealed a problem, peculiar to the railroad industry, in establishing the union shop. Labor in this industry is organized largely on craft rather than industrial lines. Engineers, firemen, trainmen, switchmen, brakemen, and conductors, for example, each are separately organized for the purposes of bargaining. And normally different unions represent different crafts; thus, on the same railroad, firemen might be represented by the Brotherhood of Firemen and Enginemen, and engineers by the Brotherhood of Locomotive Engineers. Yet seasonal and other factors produce a high degree of job mobility for individual employees in the industry, that is, of shuttling back and forth between crafts. For example, a fireman may be temporarily promoted to engineer for a short time, or a conductor might have to serve temporarily as brakeman. Under the ordinary union-shop contract, such a change from craft to craft, even though temporary, would mean that the employee would either have to belong to two unions — one representing each of the crafts — or would have to shuttle between unions as he shuttles between jobs. The former alternative would, of course, be expensive and sometimes impossible, while the latter would be complicated and might mean loss of seniority and union benefits."
 
 
 20
 Defendant Trainmen's Union proposed an amendment to the bill to provide for inter-craft mobility without dual-unionism:
 
 
 21
 "provided that when two or more crafts or classes are closely related as respects the work performed by each and employment rights in more than one of them are held by the same employee, or promotions from one of such crafts or classes to another are had, the requirement for membership shall be satisfied by membership in the organization of the employee's choice, which is the duly designated or recognized craft or class representative of any one of them."
 
 
 22
 Hearings on S. 3295 at 68-69; Hearings on H.R. 7789 at 32-33. Rejection of appellant's proposal and later adoption of the different language contained in Section 2, Eleventh (c) is a strong indication that Congress did not intend the result which appellant urges upon us.
 
 
 23
 While the bill was reported to both the Senate and the House without any provision for inter-craft mobility, S.Rep. No. 2262, 81st Cong., 2d Sess. (1951), H.R.Rep. No. 2811, 81st Cong., 2d Sess. (1951), members of the committees which had considered the bills met with representatives of the Railway Labor Executives' Association and the American Federation of Labor and agreed that when the bills were presented on the floor the committees would also offer an amendment stating,
 
 
 24
 "Provided further, that no such agreement shall require membership in more than one labor organization;" 96 Cong. Rec. 15735 (Senate 1950); 96 Cong.Rec. 17052 (House 1951).
 
 
 25
 In presenting this amendment to the Senate, Senator Hill stated,
 
 
 26
 "An employee could belong to as many different unions as he wished to belong to. But he cannot be required to belong to one. If he belongs to one, he meets the provisions of the statute, and he cannot be required to pay dues to or to belong to more than one union."
 
 
 27
 96 Cong.Rec. 15736. Four of the operating unions, including the Brotherhood of Railway Trainmen and the Order of Railway Conductors, opposed the bill as amended. The Switchmen's Union supported the bill as amended. Consideration of the bill was postponed while the unions opposing the bill were given an opportunity to agree upon an amendment. 96 Cong.Rec. 16189 (1950). Three of the four unions agreed to support the bill if amended to included the language now contained in Section 2, Eleventh (c). 96 Cong.Rec. 16261, 16330 (1950). Only the Brotherhood of Locomotive Engineers opposed adoption of the bill. Their opposition was based upon a belief that the bill would "guarantee that the young man who has served his apprenticeship as a locomotive fireman shall never be required to become a member of the Brotherhood of Locomotive Engineers." 96 Cong.Rec. 17052 (1951).
 
 
 28
 On December 7, 1950 Senators Taft and Hill offered the amendment drafted by the Brotherhood of Locomotive Firemen and Enginemen, the Order of Railway Conductors and Brotherhood of Railroad Trainmen and it was adopted by the Senate the same day. 96 Cong.Rec. 16268 (1950). Senator Holland noted that the debate over the amendment had given notice to the Senate that the amendment made membership in any union among the operating brotherhoods sufficient. 96 Cong.Rec. 16322 (1950). The Senate passed S. 3295, as amended, on December 11, 96 Cong.Rec. 16378 (1950). On January 1, 1951 the House agreed to consider S. 3295 in place of H.R. 7789, a similar bill. The debate in the House makes it clear that the Representatives understood the bill to make membership in any of the unions sufficient. Representative Scott, a member of the Interstate and Foreign Commerce Committee, said, "[The bill] provides that in transportation groups such as engineers, firemen, and so forth, membership in any organization, national in scope, which accepts such employees as members shall fulfill requirements of union membership." Representative Harris, who served as spokesman for the House Committee, explained the history of the Senate amendment and stated that it "leaves to the individual employee in the operating service the choice of operating union to which he will belong, and this specifically resolves any doubt concerning a possible requirement of dual membership." 96 Cong.Rec. 17059 (1951). And Congressman O'Hara endorsed the statement of the Brotherhood of Locomotive Engineers that the amendment would mean that an Engineer would never have to join the Engineer's Union. 96 Cong.Rec. 17052 (1951).
 
 
 29
 Neverthless appellants argue that the Supreme Court has limited the application of the proviso to situations where both unions are bargaining agents for crafts or classes of employees on the same railroad. We do not consider the language in Pennsylvania R. R. Co. v. Rychlik, 352 U.S. 480, 77 S.Ct. 421, 1 L. Ed.2d 480 (1957) which appellant relies upon to be dispositive. The Court held that "Section 2, Eleventh (c) allows alternative union membership only in those unions which have already qualified under Section 3, First of the Act, as electors of the union representatives on the National Railroad Adjustment Board, and not membership in any union which happens to be, as a matter of fact, national in scope and organized in accordance with the Railway Labor Act." 352 U.S. at 485, 77 S.Ct. at 424. The issue of the scope of Eleventh (c) as applied to unions qualified under Section 3, First, of the Act was not before the Court. It only decided that membership in a union which was not so qualified did not satisfy the union shop provisions of the Act.
 
 
 30
 However, appellant points to other language at page 489, at page 426 of 77 S.Ct. of the opinion:
 
 
 31
 "[T]he sole aim of the provision was to protect employees from the requirement of dual unionism in an industry with high job mobility, and thus to confer on qualified craft unions the right to assure members employment security, even if a member should be working temporarily in a craft for which another union is the bargaining representative," and to a statement at pages 492 and 493 at page 427 and 428 of 77 S.Ct. that,
 
 
 32
 "The only purpose of Section 2, Eleventh (c) was a very narrow one: to prevent compulsory dual unionism when an employee temporarily changes crafts. The aim of the Section, which was drafted by the established unions themselves, quite evidently was not to benefit rising new unions by permitting them to recruit members among employees who are represented by another labor organization. Nor was it intended to provide employees with a general right to join unions other than the designated bargaining representative of their craft, except to meet the narrow problem of intercraft mobility."
 
 
 33
 While the Court described the section as having only one purpose, prevention of compulsory dual unionism and provision for intercraft mobility, there are two aspects to the operation of the proviso reflecting the two situations in which intercraft mobility might lead to the dual unionism problem.
 
 
 34
 First, when an employee changes crafts his new craft may be represented by a different union. Under the statute the employee clearly does not have to change unions. The second situation in which the problem arises, which was not discussed in Rychlik, is when so many employees change crafts without changing unions that the bargaining agent for the craft no longer has majority membership in the craft. For example, when there are many layoffs so many engineers may be performing firemen's jobs that there are more engineers than firemen in firemen's positions. The result might be that the Brotherhood of Locomotive Engineers will get the contracts for both firemen and engineers and the Brotherhood of Locomotive Firemen and Enginemen will no longer have a contract with the railroad. In this situation the firemen may still want to be members of the Locomotive Firemen's Brotherhood which is their traditional craft union. The second aspect of the operation of Eleventh (c) is to permit these firemen, now a minority, to satisfy the union shop requirement by membership in their craft union, even though it is no longer their bargaining agent.
 
 
 35
 The annual reports of the National Mediation Board to Congress from 1934 to 1950 show that during this period there were 544 instances on 64 different railroads in which, through demotions or promotions due to changed employment conditions or through union recruiting, a minority union in a craft achieved a majority and as a result took over the contract traditionally held by another union. It was with this history in mind that the operating unions drafted the amendment to the bill which became § 2, Eleventh (c). Obviously the amendment which the unions drafted was intended to make it clear that an employee would be able to satisfy union shop requirements by retaining membership in an operating union whether or not it was the collective bargaining agent for the craft or class in which he was working and whether or not it was the bargaining agent for any craft or class.
 
 
 36
 In any event, the Supreme Court noted in its opinion in the Rychlik case, that in deciding the case it did not reach the questions which had been decided by this Court. 352 U.S. at 485, 77 S.Ct. 421. Our opinion, remanding to the district court for a finding on whether the union which Rychlik joined was "national in scope" within the meaning of the Act, was predicated upon holding that membership in any such union would satisfy the requirement of § 152, Eleventh (c). 229 F.2d 171, 174 (2d Cir. 1956). We see no reason to hold otherwise. No argument has been advanced which compels overruling of our decision in Rychlik, as limited by the Supreme Court's holding to unions qualified under Section 3, First of the Act.
 
 
 37
 We are not persuaded by the contrary holding of the Third Circuit in Rohrer v. Conemaugh & Black Lick Railroad Company, 359 F.2d 127 (1966), which the Seventh Circuit also has declined to follow, Birkholz v. Dirks, 391 F.2d 289 (7th Cir., Feb. 12, 1968).
 
 
 38
 Further, the Supreme Court's decision in Felter v. Southern Pacific Co., 359 U.S. 326, 79 S.Ct. 847, 3 L.Ed.2d 854 (1959) implies that an employee can satisfy the union shop requirement by membership in any of the recognized railroad unions for the First Division, since the Court assumed that Felter had validly changed his union membership although it was clear that he left the union which was his collective bargaining agent and it was not clear that his new union represented any of the railroad's employees.
 
 
 39
 It is true, as appellant contends, that as in the National Labor Relations Act, the purpose of the union shop is to prevent employees from being "free riders." See International Association of Machinists v. Street, 367 U.S. 740, 760-764, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1951). But we cannot say that the scheme adopted by Congress, which permits membership in any of the unions which jointly share the duty of administering the machinery of the National Railway Labor Act, is inconsistent with that purpose. It is quite conceivable that Congress intended to implement its scheme through a system of reciprocal gains and losses among the various operating unions. While the Brotherhood of Railroad Trainmen does not collect dues from some of the employees of the Erie Lackawanna whom it represents, concededly it collects dues from employees of other railroads who are represented by other operating unions. See 367 U.S. at 764 n. 15, 81 S.Ct. 1784.
 
 
 40
 We are unable to find any justification for appellant's contention that it is entitled to a strict union shop despite the language of the Act because it is the sole collective bargaining agent for all employees on the railroad.
 
 
 41
 Appellant's cause of action for libel, pleaded in its answer as a counter-claim, was dismissed below because it "could become an issue only if the contract complained of were held to be valid as a matter of law." We disagree. The alleged libels described the union shop agreement as a "Slave Labor Agreement" and described membership in appellant as "Dictatorship with no voice in the affairs of their Union." No matter what the status of the union shop agreement, reference to a competing union as a "dictatorship" could constitute a libel. However, this cause of action does not arise out of the same transaction or occurrence as appellees' claim. As a permissible counterclaim it must be supported by independent jurisdictional grounds. 6 Moore, Federal Practice par. 13.19 [1]. See Lesnik v. Public Industrials Corporation, 144 F.2d 968, 975-976 (2d Cir. 1944). We find appellant's counterclaim lacking in this respect and affirm its dismissal for lack of jurisdiction over the subject matter.
 
 
 42
 The judgment is affirmed.
 
 
 
 Notes:
 
 
 [1]
 Section 2
 "Eleventh. Notwithstanding any other provisions of this Act, or of any other statute of law of the United States, or Territory thereof, or of any State, any carrier or carriers as defined in this Act and a labor organization or labor organization duly designated and authorized to represent employees in accordance with the requirements of this act shall be permitted —
 "(a) to make agreements, requiring, as a condition of continued employment, that within sixty days following the beginning of such employment, or the effective date of such agreements, whichever is the later, all employees shall become members of the labor organization representing their craft or class; * * *
 "(c) The requirement of membership in a labor organization in an agreement made pursuant to sub-paragraph (a) of this paragraph shall be satisfied, as to both a present or future employee in engine, train, yard or hostling service, that is, an employee engaged in any of the services or capacities covered in the First Division of Subsection (h) of Section 153 of this chapter, defining the jurisdictional scope of the First Division of the National Railroad Adjustment Board, if said employee shall hold or acquire membership in any one of the labor organizations, national in scope, organized in accordance with this chapter, and admitting to membership employees of a craft or class in any of said services; * * * Provided, however, That as to an employee in any of said services on a particular carrier at the effective date of any such agreement on a carrier, who is not a member of any one of the labor organizations, national in scope, organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said services, such employee, as a condition of continuing his employment, may be required to become a member of the organization representing the craft in which he is employed on the effective date of the first agreement applicable to him: Provided, further, That nothing herein or in any such agreement or agreements shall prevent an employee from changing membership from one organization to another organization admitting to membership employees of a craft or class in any of said services."