**UNITED STATES of America, for the Use and Benefit of D'AGOSTINO EXCAVATORS, INC., Plaintiff-Appellee,**

v.

**The HEYWARD–ROBINSON COMPANY, Inc. and Maryland Casualty Company, Defendants-Appellants.**

**No. 766, Docket 34513.**

United States Court of Appeals, Second Circuit.

Argued May 13, 1970.

Decided July 24, 1970.

Francis X. Conway, New York City, for defendants-appellants.

Irwin M. Echtman, New York City, for plaintiff-appellee.

Before FRIENDLY and KAUFMAN, Circuit Judges, and BRYAN,* District Judge.

FREDERICK van PELT BRYAN, District Judge.

This is an appeal from a judgment for the plaintiff entered in the United States District Court for the District of Connecticut upon a jury verdict after trial before Chief Judge J. Edward Lumbard, of the Court of Appeals of this Circuit, sitting by designation.

The action involves two subcontracts for excavation work between D'Agostino Excavators, Inc. (D'Agostino) and The Heyward-Robinson Company, Inc. (Heyward) as prime contractor on two construction jobs in Connecticut. One of the prime contracts, for the construction of barracks at the Naval Submarine Base in New London, Groton, was with the federal government (the Navy job). The other, a non-federal job, was for the construction of a plant for Stelma, Inc. at Stamford (the Stelma job).

D'Agostino brought this action against Heyward and its surety, Maryland Casualty Company (Maryland) under the Miller Act, 40 U.S.C. §§ 270a and 270b, to recover payments alleged to be due on the Navy job. Heyward answered, denying liability on the Navy job and counterclaiming for alleged overpayments and extra costs of completing both the Navy job and the Stelma job. In reply, D'Agostino denied liability on the Heyward counterclaims and interposed a reply counterclaim to recover from Heyward monies alleged to be due on the Stelma job.

At the trial, the two subcontracts in suit were treated together. D'Agostino claimed that Heyward had breached both subcontracts by failing to make progress payments as required and that substantial sums were owing to it from Heyward on both jobs. Heyward claimed that D'Agostino had breached both subcontracts by permitting its compensation and employee liability insurance to lapse; that, as a result, Heyward on October 19, 1965 had terminated both; and that D'Agostino was liable for overpayments and costs of completion on both.

The issue as to whether Heyward had breached the subcontracts prior to October 19, 1965, when Heyward claimed to have terminated them, was submitted to the jury as a special question. The jury found that Heyward had breached the subcontracts prior to that date.

After amendment of the complaint by D'Agostino to allege a claim in quantum meruit for the work performed on both jobs, special questions then were

---

* Of the Southern District of New York, sitting by designation.

submitted to the jury as to the reasonable value of the work performed by D'Agostino on each project and the net amount owed by Heyward to D'Agostino on both. The jury found, in answer to these questions, that the net amount owed by Heyward to D'Agostino on both jobs was $63,988.36. Judgment against Heyward was rendered accordingly. Under a formula agreed to by the parties, it was determined that the amount due to D'Agostino on the Navy job was $40,771.46 and judgment was entered against Maryland in that sum.

The trial court denied motions for judgment notwithstanding the verdict and for a new trial pursuant to Rules 50(b) and 59, Fed.R.Civ.P. Heyward and Maryland appeal from the judgment against them, raising a variety of questions which will be dealt with seriatim.

## I.

Appellants' initial contention is that the District Court had no jurisdiction over the counterclaims on the Stelma job. They therefore contend that the Stelma claims must be dismissed and that since D'Agostino's claims on the Navy and Stelma jobs were presented to the jury as inseparable, the judgment below must be reversed.

Appellants urge that the Stelma counterclaims are not compulsory counterclaims over which the federal court acquired jurisdiction ancillary to the jurisdiction which it had over D'Agostino's Miller Act claim stated in the complaint. They say that these are permissive counterclaims over which the court had no ancillary jurisdiction and which lacked the required independent basis of federal jurisdiction.

■ This jurisdictional issue is raised for the first time in this Court. In the Court below appellants affirmatively urged that the Stelma counterclaims were compulsory. Nevertheless, it is well settled that lack of federal jurisdiction may be raised for the first time on appeal, even by a party who originally asserted that jurisdiction existed or by

the Court sua sponte. E. g., American Fire & Casualty Co. v. Finn, 341 U.S. 6, 17–18, 71 S.Ct. 534, 95 L.Ed. 702 (1951); Mansfield, Coldwater & Lake Michigan Ry. Co. v. Swan, 111 U.S. 379, 384, 4 S.Ct. 510, 28 L.Ed. 462 (1884); Precise Imports Corp. v. Kelly, 378 F.2d 1014, 1015–1016 (2d Cir.), cert. denied, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967); John Birch Society v. National Broadcasting Co., 377 F.2d 194, 199 (2d Cir. 1967); Shahmoon Industries Inc. v. Imperato, 338 F.2d 449 (3rd Cir. 1964). We turn, then, to the jurisdictional issue.

It is apparent from the record that there is no independent basis of federal jurisdiction over the Stelma counterclaims. Both D'Agostino and Heyward are New York corporations with offices in New York. There is thus no diversity jurisdiction. Clearly there is no jurisdiction under the Miller Act over these counterclaims since the Stelma contract did not involve public work for the federal government.

■ The question is whether the Stelma counterclaims are compulsory or are permissive. Under the rule in this circuit, if they are permissive there is no Federal jurisdiction over them unless they rest on independent jurisdictional grounds. O'Connell v. Erie Lackawanna R. R. Co., 391 F.2d 156, 163 (2d Cir. 1968), vacated and ordered dismissed as moot, 395 U.S. 210, 89 S.Ct. 1767, 23 L.Ed.2d 213 (1969); Lesnik v. Public Industrials Corporation, 144 F.2d 968, 976 n. 10 (2d Cir. 1944); Fraser v. Astra Steamship Corp., 18 F.R.D. 240, 241–242 (S.D.N.Y.1955); Telegraph Delivery Service v. Florists Tel. Service, 12 F.R.D. 342 (S.D.N.Y.1952); 3 J. Moore, Federal Practice ¶ 13.19 [1] at 53–57 (2d ed. 1969). But see Revere Copper and Brass, Inc. v. Aetna Casualty and Surety Company, 426 F.2d 709 (5th Cir. May 8, 1970); G. Fraser, Ancillary Jurisdiction and the Joinder of Claims in the Federal Courts, 33 F.R.D. 27, 28–34 (1963); Green, Federal Jurisdiction over Counterclaims, 48 N.W.U.L.Rev.

271, 282–285 (1953).[1] On the other hand, if they are compulsory counterclaims, they are ancillary to the claim asserted in the complaint and no independent basis of Federal jurisdiction is required. E. g., United Artists Corp. v. Masterpiece Productions, Inc., 221 F.2d 213 (2d Cir. 1955). See, e. g., Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926); C. Wright, Law of Federal Courts, §§ 9, 79 (2d ed. 1970); 3 J. Moore, *supra,* ¶ 13.15 at 31–42.

Under Rule 13(a) Fed.R.Civ.P. a counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." In United Artists Corp. v. Masterpiece Productions, *supra,* Chief Judge Clark said:

> In practice this criterion has been broadly interpreted to require not an absolute identity of factual backgrounds for the two claims, but only a logical relationship between them. Lesnik v. Public Industrials Corp., 2 Cir., 144 F.2d 968, 975, citing and quoting, inter alia, Moore v. New York Cotton Exchange, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750, thus: "'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." See also Blair v. Cleveland Twist Drill Co., 7 Cir., 197 F.2d 842, 845; Wright, Estoppel by Rule: The Compulsory Counterclaim Under Modern Pleading, 38 Minn.L.Rev. 423, 440–445, 39 Iowa L.Rev. 255; 3 Moore's Federal Practice ¶ 13.13 (2d ed. 1948 and 1954 Supp.).

221 F.2d at 216. See United States for Use and Benefit of Pickard Engineering Co. v. Southern Construction Company, 293 F.2d 493, 500 (6th Cir. 1961), rev'd in part on other grounds, sub nom. Southern Construction Co. v. Pickard, 371 U.S. 57, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962); United States v. Eastport Steamship Corporation, 255 F.2d 795 (2d Cir. 1958); C. Wright, *supra,* at 346–349.

Thus " * * * courts should give the phrase 'transaction or occurrence that is the subject matter' of the suit a broad realistic interpretation in the interest of avoiding a multiplicity of suits." 3 J. Moore, *supra,* ¶ 13.13 at 33–36 (2d ed. 1969). As the Supreme Court said in *Pickard:*

> The requirement that counterclaims arising out of the same transaction or occurrence as the opposing party's claim "shall" be stated in the pleadings was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. 371 U.S. at 60, 83 S.Ct. at 110.

In the case at bar the counterclaims were compulsory within the meaning of Rule 13(a). There was such a close and logical relationship between the claims on the Navy and Stelma jobs that the Stelma counterclaims arose out of the same "transaction or occurrence" as those terms are now broadly defined. Both subcontracts were entered into by the same parties for the same type of work and carried on during substantially the same period. Heyward had the right to terminate both subcontracts in the event of a breach by D'Agostino of either. Heyward also had the right to withhold monies due on one to apply

---

1. Apparently there is one limited exception to the rule that permissive counterclaims require an independent basis of Federal jurisdiction. Where the permissive counterclaim is in the nature of a set-off interposed merely to defeat or reduce the opposing party's claim and does not seek affirmative relief, no independent jurisdictional grounds are required. Fraser v. Astra Steamship Corp., *supra;* Marks v. Spitz, 4 F.R.D. 348 (D.Mass.1945) (dictum); C. Wright, Law of Federal Courts § 79 at 351 (2d ed. 1970). See In re Monongahela Rye Liquors, Inc., 141 F.2d 864, 869–870 (3rd Cir. 1944); G. Fraser, *supra,* at pp. 31–34; 3 J. Moore, *supra,* ¶ 13.19 [1].

against any damages suffered on the other. Progress payments made by Heyward were not allocated as between jobs and were made on a lump sum basis for both as though for a single account.

A single insurance policy covered both jobs. The letters of Heyward to D'Agostino of October 8 and 19, 1965 threatening termination and terminating both jobs, allegedly because of the cancellation by D'Agostino of this joint insurance coverage and failure to properly man both projects, treated both jobs together. These letters formed the basis of one of Heyward's major claims at the trial.

The controversy between the parties which gave rise to this litigation was with respect to both jobs and arose from occurrences affecting both. Indeed, it would seem to have been impossible for Heyward to have fully litigated the claims against it on the Navy job without including the Stelma job, because the payments it made to D'Agostino could not be allocated between the two jobs.

As the appellants themselves point out in their brief, the "Stelma and Navy claims were so interwoven at the trial that they are now absolutely incapable of separation." The proof as to payments and alleged defaults in payments was made without any differentiation between the two claims and neither of the parties was able to offer any evidence of apportionment. Finally, the evidence as to the breaches of contract claimed by the respective parties related in the main to both contracts rather than to one or the other.

█ The jurisdictional question so belatedly raised by the appellants must be viewed in light of the record as a whole. So viewed, it is plain that the Stelma counterclaims bare a logical and immediate relationship to the claims on the Navy job. Thus they arose out of the "transaction or occurrence which is the subject matter" of the suit instituted by D'Agostino on the Navy job and are compulsory counterclaims under Rule 13 (a). The Stelma counterclaims were thus ancillary to the claims asserted in the complaint over which the Federal Court had acquired jurisdiction under the Miller Act, and there is jurisdiction over them. E. g., Southern Construction Co., Inc. v. Pickard, *supra*; Moore v. New York Cotton Exchange, *supra*; United Artists Corp. v. Masterpiece Productions, Inc., *supra*; Lesnik v. Public Industrials Corp., *supra*; United States for Use and Benefit of Foster Wheeler Corp. v. American Surety Co. of New York, 142 F.2d 726 (2d Cir. 1944); United States for Use and Benefit of Central Rigging and Contracting Corp. v. Paul Tishman Co., 32 F.R.D. 223 (E.D.N.Y.1963). To require that the closely related Navy and Stelma claims must be litigated separately would result in fragmentation of litigation and multiplicity of suits contrary to one of the major purposes of Rule 13(a). See, e. g., Southern Construction Co. v. Pickard, *supra*; Moore v. New York Cotton Exchange, *supra*; United States v. Eastport Steamship Corp., *supra*; United Artists Corp. v. Masterpiece Productions, Inc., *supra*; Lesnik v. Public Industrials Corp., *supra*.

### II.

Appellants next contend that the trial court committed reversible error in excluding a memorandum offered by Heyward as an admission by D'Agostino that the amounts due from Heyward were less than the amounts D'Agostino was claiming at trial.

At trial Heyward claimed that the proffered memorandum, in the handwriting of D'Agostino's engineer, Paolella, was made during a meeting between Paolella and Goodman, Heyward's vice president, on December 16, 1965 and was initialed by both. The meeting was held after D'Agostino was off both jobs. Heyward contended that the memorandum contained figures supplied by D'Agostino representing the actual dollar amounts of work D'Agostino had performed on each of the two jobs.

D'Agostino objected to the offer on the grounds (1) that the memorandum was made as part of settlement negotia-

tions and (2) that there was no showing that Paolella had authority to bind D'Agostino. Heyward then sought to lay a foundation for its admission by testimony of Goodman as to the nature and circumstances under which the meeting of December 16 was held and the memorandum made, to show that it was not the product of settlement negotiations and that Paolella had authority to act for D'Agostino. The trial court, however, declined to permit such testimony and excluded the memorandum, stating, "I am inclined to think it was a settlement discussion."

In a letter from Heyward to its surety, Maryland, of January 19, 1966, which was in evidence, there were some indications that Heyward considered the memorandum to have been made in the course of settlement negotiations. However, the letter by no means established this. The proffered testimony of Goodman might well have indicated that the memorandum was not made in connection with settlement discussions at all but was a statement by an authorized representative of D'Agostino as to the amount it then considered to be due on the two jobs. It was only after hearing Goodman's testimony that the trial court could determine whether the memorandum was admissible or not. Thus it appears that the trial court should have heard the testimony of Goodman before passing on the admissibility of the memorandum.

■ Nevertheless, we do not find that this error was so "prejudicially erroneous as to require that the cause be remanded for a new trial." Severi v. Seneca Coal and Iron Corporation, 381 F.2d 482, 489, n. 7 (2d Cir. 1967). On appeal, errors during the course of the trial "which do not affect the substantial rights of the parties" are to be disregarded, 28 U.S.C. § 2111, Rule 61, Fed. R.Civ.P. See Severi v. Seneca Coal and Iron Corporation, supra; Shaw v. Scoville, 369 F.2d 909, 911–912 (2d Cir. 1966); Draddy v. Weston Trawling Co., 344 F.2d 945 (2d Cir. 1965); Barber v. Commissioner, 152 F.2d 930 (2d Cir. 1946).

In a trial of this length and complexity, the exclusion of the memorandum without hearing Goodman's testimony did not affect the substantial rights of the appellants nor was it unduly harmful or prejudicial to them. See, e. g., Vitarelle v. Long Island R. R. Co., 415 F.2d 302 (2d Cir. 1969); Shaw v. Scoville, supra; Draddy v. Weston Trawling Co., supra. There was ample evidence in the record to support the verdict of the jury on the first question of breach of the subcontracts by Heyward prior to October 19, 1965. Had Goodman's testimony on this subject been received, there doubtless would have been countervailing testimony from the other side. Against this background, the disputed memorandum would have been only a minor and peripheral piece of additional evidence which the jury might have weighed and considered or rejected along with the mass of other evidence in the record on the question of breach of the subcontracts. The memorandum would have had little or no bearing on the quantum meruit question. Its admission under these circumstances would have been highly unlikely to have changed the result. Such error as there was here was harmless error within the purview of 28 U.S.C. § 2111 and Rule 61, Fed.R.Civ.P. and is not ground for reversal.

### III.

■ Appellants next contend that the charge to the jury was erroneous in seven respects. Appellants have failed to preserve their right to review five of these seven claimed errors and are therefore precluded from raising them on appeal.

Rule 51, Fed.R.Civ.P. provides in pertinent part:

* * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the mat-

ter to which he objects and the grounds for his objection. * * *

The purpose of this provision "is to prevent reversals and consequent new trials because of errors the judge might well have corrected if the point had been brought to his attention." Steinhauser v. Hertz Corporation, 421 F.2d 1169, 1173 (2d Cir. 1970). See also, Pauling v. News Syndicate Company, Inc., 335 F.2d 659, 668–671 (2d Cir. 1967), cert. denied, 379 U.S. 968, 85 S.Ct. 662, 13 L.Ed.2d 561 (1965); LiMandri v. Brasileiro, 316 F.2d 3 (2d Cir. 1963); Alexander v. Kramer Bros. Freight Lines, Inc., 273 F.2d 373, 375 (2d Cir. 1959); Troupe v. Chicago D & G Bay Transit Co., 234 F.2d 253, 258–260 (2d Cir. 1956); Sweeney v. United Feature Syndicate, 129 F.2d 904, 905–906 (2d Cir. 1942).

The charge of the trial court was in two parts. It charged first on the special question posed to the jury as to whether the subcontracts had been breached by Heyward prior to October 19, 1965. All of the claimed errors are in this portion of the charge. At the conclusion of its charge on this special question, and before the jury retired, the trial court expressly gave counsel an opportunity to "call the Court's attention to any omissions or errors in the charge."

In response, counsel for the appellants raised only two objections. The first related to Heyward's right to audit D'Agostino's bills as bearing on the time within which payments from Heyward were due. This had not been the subject of a request to charge; nevertheless, the Court modified the language of the charge on this subject in response to appellants' request and so advised the jury.

The second concerned appellants' request to charge that Heyward did not have to pay D'Agostino until D'Agostino informed Heyward about its outstanding obligations to suppliers. This request had been the subject of extensive colloquy with the Court prior to the charge and the Court had then rejected the request. Counsel for the appellants merely reaffirmed the exception previously taken to the Court's ruling.[2]

The Court had not rejected any other of the appellants' requests to charge but charged on the subjects covered by these requests in its own language. Yet the appellants did not even refer to the Court's failure to charge as requested on these five subjects, which they now claim to have been error, though expressly invited by the Court to do so.[3]

The case at bar is unlike such cases in this circuit as Sweeney v. United Features Syndicate Inc., 129 F.2d 904 (2d Cir. 1942); Wright v. Farm Journal, Inc., 158 F.2d 976 (2d Cir. 1947) and Keen v. Overseas Tankship Corporation, 194 F.2d 515, 519, cert. denied, 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363 (1952) "where the judge, having focussed on the point, charged the opposite of what had been requested, so that objection would have been a useless formality." Pauling v. News Syndicate Co., *supra*, 335 F.2d at 66. Nor is it like Steinhauser v. Hertz Corporation, *supra*, where counsel had made his position abundantly clear and the trial court had made it plain that further efforts on his part to except or object would be unavailing and had warned him not to take exceptions. 421 F.2d at 1173.

This case is similar to Pauling v. News Syndicate Co., *supra*, and Alexander v. Kramer Bros. Freight Lines, Inc., *supra*, where the trial court's attention was not adequately called to the

2. The two claimed errors to which objection was taken are discussed, *infra*, at pp. 3998–4000.

3. It should also be noted that the Court informed counsel prior to the charge that "I always give counsel an opportunity to take exception outside of the presence of the Jury." Moreover, at the conclusion of the second portion of the charge concerning the amount of recovery, the Court again asked counsel if they wished to "confer with the Court on any of these matters." Counsel for the appellants replied that he did not.

errors and omissions urged on appeal and such contentions were held not to have been preserved for review. See Li-Mandri v. Brasileiro, *supra*; Keen v. Overseas Tankship Corp., *supra,* 194 F.2d at 518; 5 J. Moore, Federal Practice ¶ 51.04 (2d ed. 1969). See also, Rosenfeld v. Curtis Publishing Co., 163 F.2d 660 (2d Cir. 1947).

It should be noted that the charge of the Court on the five subjects on which appellants failed to object or except was not, as appellants contend, the opposite of what they requested. True, the trial court did not adopt the language of the appellants' requests. But "[a] judge is not bound to adopt the categorical language which counsel choose to put into his mouth." Ayers v. Watson, 137 U.S. 584, 601, 11 S.Ct. 201, 207, 34 L.Ed. 803 (1891), quoted with approval in Alexander v. Kramer Bros. Freight Lines, Inc., 273 F.2d at 375. Moreover, the trial court was not "required to incorporate every proposition of law suggested in counsel's requests provided he covers the specific principles necessary for the jury's guidance." Puggioni v. Luckenbach S. S. Co., Inc., 286 F.2d 340, 344 (2d Cir. 1961). See Halecki v. United N. Y. & N. J. Sandy Hook Pilots Assoc., 282 F.2d 137, 140 (2d Cir. 1960), cert. denied, 364 U.S. 941, 81 S.Ct. 461, 5 L.Ed.2d 372 (1961).

The trial court charged in its own language on each of these five subjects of: burden of proof of default; D'Agostino's waiver of breach prior to October 19, 1965; D'Agostino's rescission of the subcontracts; Heyward's termination of the subcontracts; and the treatment of both subcontracts together. The charge on each of these subjects was fair, adequate and proper and in accordance with applicable law.

## IV.

As to the two assignments of error in the charge which appellants preserved for review, we find that no error was committed.

As has been indicated, the first of these related to Heyward's right to audit D'Agostino's bills as bearing on the time within which payments from Heyward were due. The Court charged that payments from Heyward were due "within a short time" after D'Agostino's bills were rendered. At the conclusion of the charge, appellants' counsel objected and requested a supplemental charge to the effect that Heyward was entitled to an opportunity to audit the bills before it was required to make payment. The court granted the appellants' request only to the extent of giving a supplemental instruction to the jury that "within a short time" meant "within a reasonable time." The Court pointed out to appellants that they had not "requested any charge on that subject * * * [a]nd to charge it now * * * would give it [the subject] undue emphasis."

■ The supplemental charge given was quite adequate under the circumstances and the trial court was well within its discretion in refusing to go further at that point in the trial.

The second claimed error preserved for review concerns the Court's refusal to charge, as requested by appellants, that Heyward was not required to make progress payments to D'Agostino until D'Agostino informed Heyward about its outstanding obligations to its suppliers. Appellants' position, in substance, was that Heyward could use D'Agostino's failure to pay its suppliers as an excuse for nonpayment even if at the time payment was due it had no knowledge that D'Agostino had failed to make such payments. On the appellants' theory, if this were so, Heyward could have justified any failure on its part to make progress payments when due if it later discovered that D'Agostino was then indebted to its suppliers, even though this was not the reason for Heyward's failure to make the progress payments when required.

■ The trial court quite properly rejected this contention. As to Heyward's claim that it was entitled to withhold $30,000 of progress payments due to D'Agostino to protect itself from possible liability to D'Agostino's suppliers, the

Court charged that this amount could have been deducted from what was otherwise due to D'Agostino:

> * * * if and only if you find three things: first, that Heyward-Robinson knew of the amounts due to D'Agostino's suppliers; secondly, that Heyward-Robinson reasonably notified D'Agostino or that D'Agostino knew of Heyward-Robinson's intent to withhold payment of this amount; and, thirdly, that Heyward-Robinson actually withheld payments of this amount for the purpose of protecting itself from liability from the Plaintiff's suppliers and not for some other reason.

It further charged that Heyward "has the burden of proof with respect to these three matters."

The charge on this subject was a substantially correct statement of the circumstances under which Heyward had the right to withhold progress payments to protect itself against liability to D'Agostino's suppliers under the terms of the subcontracts in suit.

### V.

Appellants make the contention that Heyward should have been credited as a matter of law with the full face amount of four promissory notes totaling $36,-250 which Heyward had given to D'Agostino and which D'Agostino had negotiated to third parties at a discount. These notes had been reacquired by Heyward, the maker, for the sum of $18,500, after Heyward had dishonored them and litigation had been instituted by the endorsees.

The trial court left it to the jury to determine as a question of fact the amount which should be credited to Heyward on these notes. The jury was charged that the full face amount of the notes should be credited to Heyward as payment only if the parties intended the notes as payment at the time they were received. Otherwise, it was to give Heyward credit only for such amounts as D'Agostino had actually received on account of the notes.

It may be noted, in the first place, that this is another instance in which no objection was made by appellants to the charge on the subject. Moreover, the appellants neglected to call to the attention of the trial court the provisions of the Uniform Commercial Code on which they now rely.

In any event, however, the charge on this subject was substantially correct.

■ Under the common law of Connecticut, the mere giving of a note does not constitute payment unless it is agreed that the note should be received as payment. Under the law prior to the Uniform Commercial Code the burden was apparently on the defendant maker to establish that the parties intended the note to be payment. Davidson v. Bridgeport, 8 Conn. 472 (1831). In fact, acceptance of a note was presumed to be merely conditional payment. Brabazon v. Seymour, 42 Conn. 551, 554 (1875).

■ U.C.C. ¶ 3–802, Conn.Gen.Stat. Ann. § 42a–3–802 (1958) does not appear to have changed the rule on the presumed intention of the parties except where a bank is the drawer, maker or acceptor. The questions of whether the parties intended the notes to be payment, whether payment was conditional and whether the original obligation was discharged by the payments made to the transferees by Heyward and to what extent, was for the jury. The jury was entitled to find on this record that the parties did not intend the notes as payment or to be taken in satisfaction of the underlying obligations, that therefore the underlying obligations were not discharged by the satisfaction and surrender of the instruments and that Heyward was entitled to credit only for the amount it paid to the transferees and not to credit for face value. This, in substance, is what was charged.

### VI.

Appellants' remaining contentions require little discussion.

■ The argument that it was an abuse of discretion for the trial court to permit amendment of the complaint "late

in the trial" so as to allege a claim in quantum meruit is devoid of merit. The appellants have failed to show any prejudice as a result of the amendment. Moreover, the trial court, in discussing the motion to amend early in the trial, specifically indicated it would entertain an application by Heyward for additional time to produce evidence on the amended claim, if that became necessary. Heyward made no such application.

The contention that it was error to deny Heyward's request to poll the jury upon its verdict on the first question submitted to it is equally meritless. Heyward did not request that the jury be polled on its verdict on the first question when that verdict was returned. Instead, the request was made only after the jury had returned a verdict on the second question. If Heyward had wanted the jury polled on the first question it should have asked for such a poll when the jury returned its verdict on that question and not have delayed until after the jury had reached a verdict on the second question. The trial court so indicated when it denied Heyward's application because it was too late.

Finally, appellants' claim that they were prejudiced by the recesses granted during the course of the trial and that a new trial is therefore required in the interests of justice has no substance whatsoever.

While the record in this complex and difficult case is somewhat confusing, substantial justice was done here. There was ample evidence that Heyward was badly behind in its progress payments on the two subcontracts. The verdicts that (1) Heyward breached the subcontracts prior to October 19, 1965 and (2) that Heyward was liable in quantum meruit for the work performed by D'Agostino in the amount found by the jury were fully justified by the evidence.

The judgment below is affirmed.

FRIENDLY, Circuit Judge (concurring).

I cannot agree that, as maintained in Part I of the majority opinion, the counterclaim relating to the Stelma job was compulsory under F.R.Civ.P. 13(a). Of course, it is tempting to stretch a point when a jurisdictional objection is so belatedly raised by the very party who clamored for the exercise of jurisdiction until the decision went against it. But we must consider the question as if Heyward had not pleaded the Stelma counterclaim and proceeded to sue D'Agostino in some other court for failure to perform that subcontract, and D'Agostino then claimed that Heyward's failure to bring the Stelma transaction into this Miller Act suit barred the later action. Despite the desirability of requiring that all claims which in fact arise "out of the transaction or occurrence that is the subject matter of the opposing party's claim" be litigated in a single action, courts must be wary of extending these words in a way that could cause unexpectedly harsh results.

Even on a liberal notion of "logical relation," see C. Wright, Federal Courts, § 79 at 346-47 (2d ed. 1970), I am unable to perceive how Heyward's claim for breach of the Stelma subcontract arose "out of the transaction or occurrence" to wit, the Navy subcontract, that was the subject matter of D'Agostino's Miller Act claim. Whatever historical interest there may be in the circumstances that the two subcontracts were entered into between the same parties for the same type of work and were carried on during substantially the same period, these facts seem to me to be lacking in legal significance. So likewise do D'Agostino's having furnished a single insurance policy to cover both jobs and Heyward's having cancelled the subcontracts in one letter rather than two. The boiler-plate in each subcontract, whereby "if one or more other contracts, now or hereafter, exist between the parties," a breach of any such contract by D'Agostino might, at Heyward's option, be considered a breach of the contract at issue and Heyward might terminate any or all contracts so breached and withhold moneys due on any contract and apply these to damages on any other, might meet the

test if Heyward had availed itself of these rights, but it did not.

All that is left is that, as the trial proceeded, it turned out that some of Heyward's payments were not earmarked as between the two subcontracts. However, the determination whether a counterclaim is compulsory must be made at the pleading stage. The complaint was specific on how much Heyward owed on the Navy subcontract, and the counterclaims were equally so on how much D'Agostino owed for failure to complete this and how much it owed for failure to complete the Stelma subcontract. To say that the failure to earmark some payments made it impossible to try the claims separately ignores the law on application of payments. If Heyward did not specify the application of its payments, as it could, and D'Agostino had not made an application of them, as it could in default of specification by Heyward, the court would do this. Williston, Contracts, §§ 1795, 1796, 1800 (rev. ed. 1938).

Against all this appellee relied heavily on Southern Construction Co. v. Pickard, 371 U.S. 57, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962). Since the counterclaim there at issue was held not compulsory, the decision can scarcely be authority that a claim like Heyward's on the Stelma subcontract was. I think it not only is not such authority but points just the other way. The Court there held that where a subcontractor on two federal projects was obliged to bring Miller Act suits in different districts because of venue requirements, the contractor was not obliged to counterclaim for an unallocated payment in the first suit. I do not see how the Court could have reached a different result if the subcontractor had one Miller Act subcontract and another in which he could sue only in a state or a different federal district court.

Nevertheless I think the court below had jurisdiction of the Stelma counterclaim. I would now reject the conventional learning, which I followed too readily in O'Connell v. Erie Lackawanna R. R., 391 F.2d 156, 163 (1968), that the

permissive counterclaim "needs independent jurisdictional grounds to support it, with one exception," to wit, set-off, 3 Moore, Federal Practice ¶13.19 at 53–54 (2d ed. 1968). The Supreme Court left this question open in Moore v. New York Cotton Exchange, 270 U.S. 593, 609, 46 S.Ct. 367, 70 L.Ed. 750 (1926). I read Judge Clark's fine opinion for this court in Lesnick v. Public Industrial Corp., 144 F.2d 968, 976 n. 10 (2 Cir. 1944), as also doing this, although we cited it in O'Connell as upholding the conventional view, as do Professor Wright, Federal Courts 351 n. 56 (2d ed. 1970) and the majority here.

The reasons why the conventional view is wrong are set out in detail in an article by Professor Thomas F. Green, Jr., Federal Jurisdiction over Counterclaims, 48 N.W.U.L.Rev. 271 (1953), and nothing would be gained by repetition. I mention only two points. One is that for reasons there developed, *id.* at 277–81, Professor Moore's sound recognition—perhaps more accurately creation—of the exception that set-off requires no independent jurisdictional basis, see 3 Moore, Federal Practice, ¶ 13.19 at 54–55 n. 3; Marks v. Spitz, 4 F.R.D. 348 (D.Mass. 1945); Fraser v. Astra S. S. Corp., 18 F.R.D. 240 (S.D.N.Y.1955), carries the seeds of destruction of the supposed general rule. The other is that at least since United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), it is no longer thought the heavens will fall if a federal court deals with a non-federal claim when it is convenient to do so. The only argument I see against Professor Green's position is the possibility of snowballing through a plaintiff's permissive counterclaim in reply to the defendant's permissive counterclaim etc. *Id.* at 289–90. But that is more theoretical than real. In a diversity case the plaintiff in all probability would already have pleaded this in his complaint; while the problem could arise in a federal question action, for example, if D'Agostino had a claim against Heyward on still another subcontract, such cases are extremely rare.

If the decision were mine, I would therefore ask that the court sit *in banc* and overrule the holding in *O'Connell, supra,* 391 F.2d at 163, that a permissive counterclaim requires independent jurisdictional grounds. Since my brothers find themselves able to affirm without doing this, I join in the result and leave the issue for another day. On all other points I concur in Judge Bryan's thorough opinion.